1   Paula D. Pearlman, State Bar No. 109038
    Shawna L. Parks, State Bar No. 208301
2   Rebecca A. Craemer, State Bar No. 274276
    DISABILITY RIGHTS LEGAL CENTER
3   919 Albany Street
    Los Angeles, CA 90015
4   Telephone: (213) 252-7406
    Facsimile: (213) 736-1428
5   paula.pearlman@lls.edu
    shawna.parks@lls.edu
6   rebecca.craemer@lls.edu

7   Guy Ruttenberg, State Bar No. 207937
    Ali-Reza Boloori, State Bar No. 271489
8   Jason Kelly, State Bar No. 274144
    KIRKLAND & ELLIS LLP
9   333 South Hope Street
    Los Angeles, CA 90071
10  Telephone: (213) 680-8400
    Facsimile: (213) 680-8500
11  guy.ruttenberg@kirkland.com
    ali-reza.boloori@kirkland.com
12  jason.kelly@kirkland.com

13  Attorneys for Plaintiffs and the Proposed Class

14  **UNITED STATES DISTRICT COURT**

15  **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16

17  MS. WHEELCHAIR CALIFORNIA
    PAGEANT, INC., an organization, and

18  LILLIBETH NAVARRO, an
    individual, on behalf of themselves and

19  all others similarly situated,

20                          Plaintiffs,

21          v.

22  STARLINE TOURS OF
    HOLLYWOOD, INC., a business

23  entity,

24                          Defendant.

25

26

27

28

CASE NO. CV 11-2620-JFW (CWx)

**MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

Date:       August 1, 2011
Time:       1:30 P.M.
Place:      Courtroom 16
Before:     Judge John F. Walter

# TABLE OF CONTENTS

Page

I.    Introduction ................................................................................. 1

II.   Statement Of Facts And Evidence In Support Of Class Action Treatment. ... 2

    A.   Defendant Starline Has Refused To Accommodate People With
       Disabilities On Its Tour Services For Years. ........................................ 2

       1.   Starline's policies and practices fail to offer people with
          mobility disabilities a reasonable accommodation. ................... 2

          a.   Ms. Wheelchair California has been denied access on
             several occasions by Starline's failure to offer
             reasonable accommodations. ......................................... 3

          b.   Ms. Navarro has been denied access numerous times
             because of Starline's failure to provide reasonable
             accommodations. ....................................................... 4

       2.   Starline's bus tours do not provide the required accessible
          entrances, seating, or paths of travel. ..................................... 6

    B.   The Proposed Class Includes At Least 3,000,000 People With
       Mobility Disabilities Who Cannot Access Starline's Tours Because
       Of Starline's Inaccessibility. ...................................................... 7

    C.   Plaintiffs, As Well As The Proposed Class, Have Suffered
       Discrimination By Starline's Refusal To Provide Legally-
       Mandated Accommodations. ....................................................... 8

       1.   Plaintiff Ms. Wheelchair California has suffered
          discrimination repeatedly by Starline's unlawful refusal to
          accommodate its members because of their disabilities. ............ 8

       2.   Plaintiff Ms. Lillibeth Navarro Has Been Injured By
          Starline's Unlawful Discrimination And Refusal To
          Accommodate Her Because Of Her Disability ......................... 10

III.  This Court Should Certify The Proposed Class Because Plaintiffs Satisfy
     The Certification Requirements Of Rule 23(a) And (b)(2). ......................... 11

    A.   Definition Of The Proposed Class ....................................................... 12

    B.   The Proposed Class Is Numerous And Satisfies Rule 23(a)(1). ......... 12

    C.   Plaintiffs' Claims Are Based On Common Questions Of Law And
       Fact, And Are Capable Of Classwide Resolution For Rule 23(a)(2)
       Purposes. .................................................................................. 15

       1.   Starline's discriminatory policies and practices violate the
          Americans with Disabilities Act and analogous California
          anti-discrimination statutes. ................................................... 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

2.   Plaintiffs' claims are based on Starline's discriminatory practices and policies that are common to the Proposed Class. ........................................................................... 18

D.   Plaintiffs' Claims Are Typical Of Those Of The Proposed Class. ...... 19

E.   Plaintiffs And Class Counsel Will Fairly And Adequately Represent The Interests Of The Class As Required By Rule 23(a)(4). ................................................................................ 20

F.   Certification Of The Proposed Class Is Appropriate Under Rule 23(b)(2) Because The Primary Relief Sought Is Declaratory And Injunctive Relief. .................................................................... 23

IV.   Conclusion ........................................................................ 24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

Page

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591, 117 S. Ct. 2231 (1997) ................................................. 24

*Arnold v. United Artists Theatre Circuit, Inc.,*
  158 F.R.D. 439 (N.D. Cal. 1994) ............................................ 15, 19, 20

*Bates v. United Parcel Serv.,*
  204 F.R.D. 440 (N.D. Cal. 2001) ......................................................... 13

*Bd. Of Trs. Of the Leland Stanford Junior Univ. v. Tyco Int'l,*
  253 F.R.D. 524 (C.D. Cal. 2008) ........................................................... 5

*Berlowitz v. Nob Hill Masonic Mgmt.,*
  1996 WL 724776 (N.D. Cal. Dec. 6, 1996) ................................... 12, 14

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ............................................................... 12

*Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal.4th 163 (1999) .......................................................................... 17

*Gardner v. Shell Oil Co.,*
  2011 WL 1522377, at *4 (N.D. Cal. Apr. 21, 2011) ........................... 13

*Gen. Tel. Co. of Southwest v. Falcon,*
  457 U.S. 147, 102 S. Ct. 2364 (1982) ................................................. 19

*Gen. Tel. Co. v. E.E.O.C.,*
  446 U.S. 318, 100 S. Ct. 1698 (1980) ................................................. 12

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ................................................. 11, 15, 19

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ......................................................... 11, 19

*Hunt v. Check Recovery Sys., Inc.,*
  241 F.R.D. 505 (N.D. Cal. 2007) ......................................................... 19

*Hunt v. Wash. State Apple Adver. Comm'n*
  432 U.S. 333 (1977) ............................................................................. 21

*Ikonen v. Hartz Mountain Corp.,*
  122 F.R.D. 258 (S.D. Cal. 1988) ......................................................... 12

*Jones v. Diamond,*
  519 F.2d 1090 (5th Cir. 1975) ............................................................. 12

iii

*Lerwill v. Inflight Motion Pictures, Inc.*,
     582 F.2d 507 (9th Cir. 1978) ............................................................... 20

*Moeller v. Taco Bell Corp.*,
     220 F.R.D. 604 (N.D. Cal. 2004) ............................................ 12, 13, 14

*Nat'l Fed'n of Blind v. Target Corp.*,
     582 F. Supp. 2d 1185 (N.D. Cal. 2007) ............................................... 13

*Oregon Advocacy Ctr. v. Mink*,
     322 F.3d 1101 (9th Cir. 2003) ............................................................. 21

*Park v. Ralph's Grocery Co.*,
     254 F.R.D. 112 (C.D. Cal. 2008) ................................................ 2, 13, 18, 20

*Schwarm v. Craighead*,
     233 F.R.D. 655 (E.D. Cal. 2006) ......................................................... 12

*United Food and Commercial Workers Union v. Brown Grp., Inc.*,
     517 U.S. 544 (1996) ............................................................................. 21

*Wal-Mart Stores, Inc. v. Dukes*,
     2011 WL 2437013 at *7 (U.S. June 20, 2011) .................... 11, 15, 19, 23

*Zinser v. Accufix Research Inst., Inc.*,
     253 F.3d 1180 (9th Cir. 2001) ............................................................. 11

**Statutes**

42 U.S.C. § 12102 ........................................................................... 8, 21

42 U.S.C. § 12181 ............................................................................... 16

42 U.S.C. § 12182 ............................................................................... 16

42 U.S.C. § 12184 ............................................................................... 16

**Other Authorities**

49 C.F.R. § 37 ..................................................................................... 21

49 C.F.R. § 38 ................................................................................. 7, 18

Cal. Bus. & Prof. Code § 17200 ................................................... 16, 17

Cal. Bus. & Prof. Code § 17201 ......................................................... 17

Cal. Bus. & Prof. Code § 17203 ......................................................... 17

Cal. Civ. Code § 51 ....................................................................... 16, 17

Cal. Civ. Code § 54 ....................................................................... 16, 17

iv

**Rules**

Federal Rule of Civil Procedure 23 ........................................................passim

Federal Rule of Civil Procedure 30 ................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   This case addresses Los Angeles's "oldest and largest sightseeing tour

2   company" and its policy and practice of denying people with disabilities access to its

3   tour vehicles and services solely because of their disability.  In response to these

4   violations of federal and California civil rights statutes, Plaintiffs—an organization

5   that advocates on behalf of the disability community and an individual who has a

6   mobility disability—have filed this action and now request that this Court certify this

7   action as a class action.

8   Plaintiffs Ms. Wheelchair California Pageant, Inc. ("Ms. Wheelchair

9   California") and Lillibeth Navarro (collectively, "Plaintiffs") submit the following

10   memorandum in support of their motion to: (a) certify a class under Federal Rule of

11   Civil Procedure 23(b)(2) composed of persons with mobility disabilities who have

12   been denied access to the tour vehicle services of Starline Tours of Hollywood, Inc.

13   ("Starline") on the basis of their disability; (b) appoint Plaintiffs as the class

14   representatives; and (c) appoint Disability Rights Legal Center and Kirkland & Ellis

15   LLP as class counsel.

16   **I.      Introduction**

17   Starline is a Los Angeles, California-based tour services provider that

18   represents itself to be "L.A.'s premiere choice in sightseeing since 1935."  As many as

19   1 million passengers use Starline's services annually, riding the dozens of tours it

20   offers daily in the southern California area.  Its tours include the famed Movie Stars'

21   Homes Tour, the Hop-on/Hop-off Double Decker City Tour, and the new TMZ

22   Hollywood Tour.  By providing tours in "most foreign languages" and offering to

23   pick-up passengers from over 100 southern California hotels, Starline has made itself

24   a preeminent player in the southern California tourism industry and the "oldest and

25   largest sightseeing tour company in Los Angeles, California."

26   During this same time, however, Starline has engaged in a long-running

27   practice of discriminating against people with disabilities solely on the basis of their

28   disability.  Starline has failed to implement legally-mandated modifications to make

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    its tours and vehicles accessible to people with mobility disabilities, resulting in

2    inaccessible vehicles and discriminatory practices and policies.  Starline has

3    effectively denied access to Plaintiffs Ms. Wheelchair California and Ms. Navarro on

4    several occasions because of their disabilities.

5       In response to Starline's acts and omissions that violate the Americans with

6    Disabilities Act and analogous California statutes, Plaintiffs filed this action in order

7    to enjoin Starline's discrimination.  Plaintiffs now seek class certification.  Class

8    actions serve two purposes: "(1) to accomplish judicial economy by avoiding multiple

9    suits, and (2) to protect rights of persons who might not be able to present claims on

10    an individual basis." *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 117 (C.D. Cal.

11    2008).  The certification of a class action is governed by Federal Rule of Civil

12    Procedure 23.  Because this action promotes these dual purposes and Plaintiffs satisfy

13    the certification requirements of Federal Rule of Civil Procedure 23(a) and (b)(2),

14    Plaintiffs respectfully request that this Court certify this action as a class action.

15   **II.**    **Statement Of Facts And Evidence In Support Of Class Action Treatment.**

16      **A.**    **Defendant Starline Has Refused To Accommodate People With**

17          **Disabilities On Its Tour Services For Years.**

18        **1.**    Starline's policies and practices fail to offer people with mobility

19           disabilities a reasonable accommodation.

20       Starline has not provided, and continues not to provide, people with mobility

21    disabilities the reasonable accommodations that are required by federal and California

22    laws.  Its employees have told people with mobility disabilities that its vehicles cannot

23    accommodate them because of their disabilities.  Its sales people have refused to sell

24    tickets to people with mobility disabilities because of their disabilities.  And even

25    some of its marketing materials state that Starline's vehicles are not accessible to

26    people with mobility disabilities.  These policies and practices have served to deny

27    people with mobility disabilities access to Starline's services.  *See* Declaration of

28    Ruthee Goldkorn of Ms. Wheelchair California Pageant, Inc. in Support of Plaintiffs'

1    Motion for Class Certification ("Goldkorn Decl."); Declaration of Laura Williams of

2    Ms. Wheelchair California Pageant, Inc. in Support of Plaintiffs' Motion for Class

3    Certification ("Williams Decl."); Declaration of Lillibeth Navarro in Support of

4    Plaintiffs' Motion for Class Certification ("Navarro Decl.").

5                         a.       Ms. Wheelchair California has been denied access on

6                                  several occasions by Starline's failure to offer reasonable

7                                  accommodations.

8        Ms. Wheelchair California has been denied access numerous times because of

9    mobility disabilities.  In late 2006, Ms. Ruthee Goldkorn, the Executive Director of

10   Ms. Wheelchair California, called Starline to arrange a tour for a group of people,

11   including herself and other members of Ms. Wheelchair California.  Goldkorn Decl.

12   ¶¶ 1, 12.  This group included people with mobility disabilities who use wheelchairs

13   for mobility purposes.  *Id.* ¶¶ 1-2, 5-7, 12.  The Starline employee whom Ms.

14   Goldkorn spoke with on the phone told her that none of Starline's tour buses could

15   accommodate people who use wheelchairs.  *Id.* ¶ 12.  Ms. Goldkorn was told that the

16   group could not make a reservation and could not ride on a tour.  *Id.*

17       In late 2007, Ms. Goldkorn again called Starline on behalf of Ms. Wheelchair

18   California.  *Id.* ¶ 13.  Like the year before, Ms. Goldkorn sought to make a tour

19   reservation for members of Ms. Wheelchair California with mobility disabilities and

20   who use wheelchairs for mobility purposes.  *Id.* ¶¶ 1-2, 5-7, 13.  The Starline

21   employee whom Ms. Goldkorn spoke with on the phone told her that Starline's tour

22   vehicles could not accommodate people who use wheelchairs.  *Id.* ¶ 13.  This

23   employee then told Ms. Goldkorn to speak with the Hollywood Chamber of

24   Commerce.  *Id.*  When she called the Chamber of Commerce and said she had been

25   referred by Starline, nobody there could explain why Starline made the referral or

26   knew anything regarding the accessibility of Starline's vehicles for people with

27   mobility disabilities.  *Id.*  As a result, she could not schedule a Starline tour for Ms.

28   Wheelchair California.  *Id.*

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    In late 2009, Ms. Goldkorn again called Starline to arrange a tour for members

2  of Ms. Wheelchair California.  *Id.* ¶ 14.  Consistent with her previous experiences, the

3  Starline employee whom Ms. Goldkorn spoke with on the phone told her that

4  Starline's tours could not accommodate wheelchair users.  *Id.*  But this time, the

5  Starline employee also told Ms. Goldkorn to speak with a different Starline employee

6  who organized charter tours, explaining that Starline's charter tour vehicles might be

7  able to accommodate wheelchair users.  *Id.* When Ms. Goldkorn called and spoke with

8  this second Starline employee, she was told that Starline's charter tour vehicles could

9  not accommodate wheelchair users.  *Id.* ¶ 15.  Again, Ms. Wheelchair California was

10  denied access.  *Id.*

11    Most recently, Ms. Goldkorn called Starline in November 2010 for information

12  about the accessibility of Starline's tour vehicles.  *Id.* ¶ 16.  The Starline employee

13  whom Ms. Goldkorn spoke with on the phone told her that all of Starline's tours were

14  accessible to wheelchair users.  *Id.* ¶ 16.  Later, Ms. Laura Williams, a board member

15  of Ms. Wheelchair California who uses a wheelchair because of a mobility disability,

16  went to Starline's ticket kiosk in Hollywood, California and attempted to purchase a

17  ticket for Starline's Hop-on/Hop-off tour.  *Id.* ¶¶ 17-18, 20; Williams Decl. ¶¶ 4-6.

18  But, the Starline sales people Ms. Williams spoke with at the ticket kiosk told her that,

19  because of her wheelchair, she could not ride the tour.  Williams Decl. ¶¶ 6-8.  As a

20  result, Ms. Williams was denied access and did not ride the tour.  *Id.*

21           b.    Ms. Navarro has been denied access numerous times

22                because of Starline's failure to provide reasonable

23                accommodations.

24    Likewise, Ms. Lillibeth Navarro, who suffers from a mobility disability and

25  uses a wheelchair for mobility purposes, has been repeatedly denied access to

26  Starline's tour services because of her mobility disability.  Navarro Decl. ¶ 3.  In

27  September 2010, Ms. Navarro and her sister visited Starline's ticket kiosk in

28  Hollywood, California to purchase tickets for a Starline tour.  *Id.* ¶¶ 3, 11.  The

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  Starline sales person whom Ms. Navarro spoke with told her that Starline's tour

2  vehicles could not accommodate wheelchairs.  *Id.* ¶ 11.  The Starline sales person told

3  Ms. Navarro that in order to ride on a tour, she would have to get out of her

4  wheelchair and get herself onto the Starline tour vehicle.  *Id.*  Because Starline's tour

5  vehicle could not accommodate wheelchairs, Ms. Navarro could not ride Starline's

6  tours and was denied access.  *Id.*

7      Again in May 2011, Ms. Navarro and friends visiting from out-of-town went to

8  Starline's ticket kiosk in Hollywood to purchase a ticket for a tour.  *Id.* ¶ 12.  Ms.

9  Navarro asked a Starline sales person at the ticket kiosk if Starline's Hop-on/Hop-off

10 tour was wheelchair accessible.  *Id.*  The Starline sales person told Ms. Navarro that

11 none of Starline's vehicles for the Hop-on/Hop-off tour are wheelchair accessible.  *Id.*

12 Once more, Starline effectively denied Ms. Navarro access to its tours.  *Id.*

13     Starline concedes that, prior to the commencement of this litigation a few

14 months ago, Starline sales people and receptionists did not receive any training

15 regarding people with mobility disabilities.  Declaration of Jason Kelly in Support of

16 Plaintiffs' Motion for Class Certification ("Kelly Decl."), Ex. 25 (Sapir Dep. 180:6-

17 25).  Starline does not know the substance or extent of the training that it supposedly

18 now provides its employees, as it has failed to provide any detailed discovery on this

19 point in response to Plaintiffs' requests.[1]  *E.g.*, Kelly Decl., Exs. 14, 15, 25 (Sapir

20 172:4-5); *U.S. v. Taylor*, 166 F.R.D. 356, 362-63 (M.D. N.C. 1996) ("[I]f a party

---

[1] Plaintiffs' knowledge of facts regarding Starline's services, vehicles, and accessibility for people with mobility disabilities is limited to information available to the general public and on an incomplete Rule 30(b)(6) deposition.  Kelly Decl., ¶¶ 2-23.  Plaintiffs have sought additional information from Starline through discovery, but so far Starline has refused to answer a single interrogatory or produce a single document, interposing only boilerplate objections.  *Id.*, Exs. 7-8. Further, Starline produced a witness for Plaintiffs' Rule 30(b)(6) deposition who was unprepared to provide testimony on many of the noticed topics.  *Id.* ¶¶ 20-22; *Bd. Of Trs. Of the Leland Stanford Junior Univ. v. Tyco Int'l*, 253 F.R.D. 524, 526 (C.D. Cal. 2008) (stating that corporations "have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter").  Plaintiffs have initiated a meet-and-confer, and anticipate filing a motion to compel.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   states it has no knowledge or position as to a set of alleged facts or areas of inquiry at

2   a Rule 30(b)(6) deposition, it cannot argue for a contrary position at trial without

3   introducing evidence explaining the reasons for the change.").

4        Starline's website, brochures, and booking locations also provide no

5   information about the accessibility of Starline's tours or vehicles to people with

6   mobility disabilities.  Kelly Decl., Ex. 25 (Sapir Dep. 196:25-197:7); Williams Decl.

7   ¶ 5; Declaration of Dafna Gozani in Support of Plaintiffs' Motion for Class

8   Certification ("Gozani Decl.") ¶ 15.  Its "FAQ" website page, for instance, makes no

9   reference to wheelchair accessibility.  Kelly Decl., Ex. 14.  Still, other forms of

10   Starline advertising clearly state that its tours do not offer any accommodations to

11   people with mobility disabilities.  *Id.*, Exs. 15-16.

12        Starline is part of Hollywood CityPASS, an organization that promotes and

13   sells tours.  Kelly Decl., Ex. 25 (Sapir Dep. 197:23-198:6; 198:9-12).  Starline

14   advertising on Hollywood CityPASS's website discloses to the public that Starline's

15   tours are not accessible to people with mobility disabilities.  *Id.*, Exs. 15, 25 (Sapir

16   Dep. 198:14-200:10).  It states: "Passengers required to ascend a few steps to board

17   tour busses; lifts not available.  Wheelchairs may be checked at the Starline office for

18   the duration of the tour."  *Id.*; *see also* Kelly Decl., Exs. 16, 25 (Sapir Dep. 200:14-

19   202:11).

20             2.        Starline's bus tours do not provide the required accessible

21                       entrances, seating, or paths of travel.

22        Starline provides sightseeing tour services that include dozens of tours in

23   California and over 50 tour packages in southern California alone.  Kelly Decl., Ex2.

24   12-13.  It touts itself as the "oldest and largest sightseeing tour company in Los

25   Angeles, California" and claims to have "pioneered the famous Movie Stars Homes

26   Tour in 1935."  Kelly Decl., Ex. 12.

27        According to Starline's Rule 30(b)(6) designee, Starline owns and leases 73

28   tour vehicles to service its tours: 47 vans and larger vans, 25 double-decker buses, and

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   one trolley.  Kelly Decl., Ex. 25 (Sapir Dep. 125:16-23; 126:17-20; 127:10-20).  The

2   vast majority of these vehicles do not have any accessibility features for people with

3   mobility disabilities.  Starline's Rule 30(b)(6) designee represented that only twelve of

4   the vans have either a wheelchair lift or ramp, and four of the double-decker buses

5   have a ramp.  Kelly Decl., Ex. 25 (Sapir Dep. 141:9-11, 21-24; 146:17-147:9; 153:13-

6   25).  None of the ramps on the vans or buses have handrails.  Kelly Decl., Ex. 25

7   (Sapir Dep. 168:11-16).  These vehicles that lack any lifts or ramps are inaccessible to

8   people with mobility disabilities, as they require passengers to climb stairs and

9   overcome barriers in the vehicles' doorways.  *See* Gozani Decl. ¶¶ 8-15.

10      According to its Rule 30(b)(6) witness, Starline does not know any details

11   necessary to determine whether the limited ramps and lifts currently available are

12   actually accessible.  *See* Kelly Decl., Exs., 7-8, 25 (Sapir Dep. 151:7-152:16; 153:21-

13   154:7).  Information necessary for such a determination includes the dimensions of the

14   ramp or lift, surface quality, load capacity, mechanism of operation, when they were

15   manufactured, by whom, and how they were installed.  *E.g.*, 49 C.F.R. § 38.  Starline

16   continues to engage in a systematic practice of denying people with mobility

17   disabilities access to its tours, though the full extent of Starline's practices are the

18   subject of ongoing discovery, given Starline's failure thus far to respond to Plaintiffs'

19   discovery requests.

20      B.   The Proposed Class Includes At Least 3,000,000 People With Mobility

21           Disabilities Who Cannot Access Starline's Tours Because Of Starline's

22           Inaccessibility.

23      Starline's barriers and discriminatory practices and policies affect a substantial

24   number of people with mobility disabilities.  There are a total of 417,000 Los Angeles

25   County residents and overnight tourists who use wheelchairs and scooters.

26   Declaration of Dr. Mitch P. LaPlante in Support of Plaintiffs' Motion for Class

27   Certification ("LaPlante Decl.") ¶ 19.  But based on information from the U.S. Census

28   Bureau, travel industry data, and Dr. Mitch P. LaPlante's 2010 article, titled

7

"Demographics and Trends in Wheelchair Mobility Equipment Use and Accessibility in the Community", the Proposed Class could reasonably include several million individuals.  LaPlante Decl. ¶¶ 13-15, 19-20.  People with mobility disabilities include individuals who use wheelchairs and scooters, canes, crutches, or walkers or who otherwise experience a substantial impairment of their ability to walk or climb stairs.  *See* 42 U.S.C. § 12102 (defining "disability" to include "physical [ ] impairment that substantially limits one or more major life activities", including but not limited to "walking, standing, lifting, [and] bending"); *see also* LaPlante Decl. ¶ 14.

The Proposed Class is correctly estimated to be in the several millions based on both overnight tourists and Los Angeles County residents, as Starline is a major attraction for visitors and locals.  LaPlante Decl. ¶ 15.

C.    Plaintiffs, As Well As The Proposed Class, Have Suffered Discrimination By Starline's Refusal To Provide Legally-Mandated Accommodations.

1.    Plaintiff Ms. Wheelchair California has suffered discrimination repeatedly by Starline's unlawful refusal to accommodate its members because of their disabilities.

Plaintiff Ms. Wheelchair California Pageant, Inc. is a private, non-profit corporation located in Moreno Valley, California.  Goldkorn Decl. ¶ 4.  Its mission is to provide women who are wheelchair users an opportunity to successfully educate others on behalf of and advocate for people living with disabilities.  *Id.* ¶ 5.  Ms. Ruthee Goldkorn is the Executive Director of Ms. Wheelchair California.  *Id.* ¶ 1.  She has multiple sclerosis ("MS"), which has substantially impaired her mobility.  *Id.* ¶ 2.  As a result, she has used a wheelchair for mobility purposes since 1990.  *Id.*  Like Ms. Wheelchair California, Ms. Goldkorn is an advocate for people with disabilities.  *Id.* ¶ 3.  She is the owner of No Barriers: Disabled Access Consulting and Advocacy Services, a sole proprietor private consulting company that helps businesses implement building codes and policies that comply with the requirements of civil

8

1  rights laws regarding people with disabilities, including the Americans with

2  Disabilities Act ("ADA").  *Id.*  She also serves on the Executive Board and Legislative

3  Committee of Californians for Disability Rights ("CDR").  *Id.*  CDR is a 40-year-old

4  statewide organization that advocates on behalf of the disability community by

5  engaging public officials and promoting legislation that supports equal access for

6  people with disabilities.  *Id.*  There she has helped educate public officials and seek

7  grants related to equality for people with disabilities.  *Id.*

8       Ms. Wheelchair California is best known for holding an annual statewide

9  pageant.  *Id.* ¶ 6.  Unlike a traditional beauty pageant, the Ms. Wheelchair California

10  Pageant is a competition based on advocacy and achievement that selects the most

11  accomplished and articulate contestant to represent people with disabilities.  *Id.*  The

12  winner of the Ms. Wheelchair California Pageant serves as the organization's

13  spokeswoman and participates in public events on the organization's behalf.  *Id.* ¶¶ 6-

14  7.  Her duties include making public appearances, advocating before state and local

15  governments like boards of supervisors and city counsels, and conducting public

16  seminars and educational programs.  *Id.* ¶ 7.  Through these efforts, Ms. Wheelchair

17  California seeks to promote equality and access by eliminating discrimination that

18  negatively affects the disability community.  *Id.*  The current Ms. Wheelchair

19  California titleholder is Ms. Corey Petersen.  *Id.* ¶ 8.  Ms. Petersen served as an Active

20  Duty Marine Corps Staff Sergeant until a snowmobile accident in 2007 left her

21  paralyzed from the chest down.  *Id.*  Undeterred by this accident, Ms. Petersen is a

22  Community Outreach Manager of the Semper Fi Fund, a Marine Corps foundation

23  that helps the families of injured service members, and a gold medalist at the National

24  Veterans Wheelchair Games.  *Id.*

25       One of the many responsibilities of the Ms. Wheelchair California Pageant

26  winner is to represent the state of California in the Ms. Wheelchair America Pageant,

27  a national pageant consisting of the winners of each state-level competition.  *Id.* ¶ 9.

28  Like the Ms. Wheelchair California Pageant, the Ms. Wheelchair America Pageant is

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   a competition based on advocacy and achievement.  *Id.*  The winner of the national

2   pageant serves as the spokeswoman for the Ms. Wheelchair America organization and

3   people with disabilities across the country.  *Id.* ¶ 10.  Her responsibilities include

4   making public appearances and advocating on behalf of people with disabilities.  *Id.*

5   Every year, the Ms. Wheelchair America Pageant winner is invited to California to

6   appear with the Ms. Wheelchair California Pageant winner and participate in the Rose

7   Parade in Pasadena, California on New Year's Day.  *Id.* ¶ 11.

8        On at least three occasions in 2006, 2007, and 2009, Ms. Goldkorn called

9   Starline on behalf of Ms. Wheelchair California in order to arrange a tour.  *Id.* ¶¶ 12-

10  15.  The tours would have been for members of Ms. Wheelchair California and the

11  winner of the Ms. Wheelchair America Pageant during the New Year season when she

12  was in Los Angeles.  *Id.*  On each occasion, Starline employees told Ms. Goldkorn

13  that Starline is unable to accommodate people who use wheelchairs.  *Id.*  In 2010, Ms.

14  Williams, a board member of Ms. Wheelchair California, was told by a Starline sales

15  people she could not use Starline's services because of her mobility disabilities.

16  Williams Decl. ¶¶ 4-8.

17                    2.    Plaintiff Ms. Lillibeth Navarro Has Been Injured By Starline's

18                          Unlawful Discrimination And Refusal To Accommodate Her

19                          Because Of Her Disability.

20        Plaintiff Ms. Lillibeth Navarro has used a wheelchair for mobility purposes for

21  nearly her entire life.  Navarro Decl. ¶ 3.  At the age of five months, she contracted

22  polio and was left unable to walk on her own.  *Id.* Today she is the founder and

23  Executive Director of Communities Actively Living Independent and Free

24  ("CALIF"), a Los Angeles, California-based organization that provides people with

25  disabilities assistance with various daily-living issues.  *Id.* ¶¶ 4-6.  Amongst many

26  other services, CALIF offers transition services to people with disabilities to help

27  them move out of nursing homes and begin living in their own homes.  *Id.*  Ms.

28  Navarro also serves as a Commissioner on the Personal Assistance Services Council

10

1    ("PASC") and a Commissioner on the California Commission on Disability Access

2    ("CCDA").  *Id.* ¶¶ 8-10. In these capacities, Ms. Navarro works to end discrimination

3    aimed at people with disabilities by conducting studies, workshops, educational

4    seminars, and engaging in legislative advocacy.  *Id.*

5         Like Ms. Wheelchair California, Ms. Navarro has been denied access to

6    Starline's tour services on the basis of her disability.  On two occasions, Ms. Navarro

7    went to Starline's ticket kiosk in Hollywood and attempted to purchase a ticket for a

8    Starline tour.  *Id.* ¶¶ 11-13.  The Starline sales people she spoke with told her that

9    Starline's tour vehicles cannot accommodate people with mobility disabilities.  *Id.*  As

10   a result, she was denied access to Starline's services.  *Id.*

11   **III.   This Court Should Certify The Proposed Class Because Plaintiffs Satisfy**

12   **The Certification Requirements Of Rule 23(a) And (b)(2).**

13        Plaintiffs must satisfy the four requirements of Rule 23(a) and one of the three

14   categories of Rule 23(b) to certify this action as a class action.  *Zinser v. Accufix*

15   *Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  The Court must determine

16   whether the Proposed Class satisfies these Rule 23 requirements.  *Hanlon v. Chrysler*

17   *Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998); *see also Wal-Mart Stores, Inc. v. Dukes*,

18   2011 WL 2437013 at *7 (U.S. June 20, 2011).

19        This limited determination for Rule 23 may "entail some overlap with the

20   merits of the plaintiff's underlying claim" because it "'generally involves

21   considerations that are enmeshed in the factual and legal issues comprising the

22   plaintiff's cause of action.'"  *Wal-Mart*, 2011 WL 2437013 at *7.  But "'a motion for

23   class certification is not the appropriate point at which to resolve the merits of a

24   plaintiff's claim.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992);

25   *see also Wal-Mart*, 2011 WL 2437013 at *7 (reiterating that this inquiry only

26   "touch[es] aspects of the merits in order to resolve preliminary matters").  Rather, the

27   Court must accept the allegations made in support of certification as true, and may

28   consider extrinsic evidence submitted by the parties.  *Blackie v. Barrack*, 524 F.2d

11

891, 901 (9th Cir. 1975); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 607-08 (N.D. Cal. 2004); *see also Wal-Mart*, 2011 WL 2437013 at *7 (instructing courts to look at the allegations and supporting evidence).

Further, "Rule 23's requirements 'must be read liberally in the context of civil rights suits.'" *Berlowitz v. Nob Hill Masonic Mgmt., 1996 WL 724776 (N.D. Cal. Dec. 6, 1996)* (citing *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975)).

Here, certification of the Proposed Class in this case should be granted because the requirements of Rule 23(a) and (b)(2) have been satisfied. During the meet-and-confer process required by the Local Rules, Starline's counsel refused to stipulate to any of the elements required for establishing a class action. *See* Kelly Decl., Ex. 20. However, Starline has never identified any basis for objecting to class certification. *See id.* During the meet-and-confer process, Starline simply contested the merits of Plaintiffs' substantive claims (which is not the issue on this motion). *See id.* As explained below, class certification is appropriate here.

A.     Definition Of The Proposed Class

Plaintiffs request that this Court certify the Proposed Class defined as:

All persons with mobility disabilities who, because of their disabilities, are denied physical access to Starline Tours of Hollywood, Inc.'s services.

B.     The Proposed Class Is Numerous And Satisfies Rule 23(a)(1).

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity threshold is not high. Courts have established "no absolute limitations for determining numerosity." *Schwarm v. Craighead*, 233 F.R.D. 655, 660 (E.D. Cal. 2006) (citing *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S. Ct. 1698 (1980)); *Berlowitz*, 1996 WL 724776 at *3 ("'No arbitrary rules regarding the necessary size of classes have been established.'"). But a class of as few as 40 members is generally sufficient for Rule 23(a)(1) purposes. *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("'As a general rule, . . . classes of 40 or more are numerous enough.'"); *Nat'l*

12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1199 (N.D. Cal. 2007) ("As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement.") (internal citations omitted).

Moreover, numerosity does not require joinder of all members to be impossible, but only impracticable. *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 444 (N.D. Cal. 2001) (finding numerosity satisfied by a nationwide class of less than 500 potential members). Joinder of all members is impracticable when members of the class are unknown and cannot be readily identified. *Park*, 254 F.R.D. at 120 (citing *Moeller*, 220 F.R.D. at 608). Plaintiffs need not state the exact number of potential class members. *Bates*, 204 F.R.D. at 444 ("Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity."). "[W]here 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *Gardner v. Shell Oil Co.*, 2011 WL 1522377, at *4 (N.D. Cal. Apr. 21, 2011); *see also Moeller*, 220 F.R.D. at 608 ("A court may make common sense assumptions to support a finding that joinder would be impracticable.").

The Proposed Class in this case includes at least several millions, including both overnight tourists and residents in Los Angeles County who rely on wheelchairs and scooters. LaPlante Decl. ¶ 19. While a class of this size amply fulfills the numerosity requirements of Rule 23(a)(1), Dr. LaPlante, a world-renowned expert on disability, has reached the "inevitable conclusion . . . that the size of the affected class comprises several million persons, and therefore a very substantial class." *Id.* ¶ 20. His method uses tourism and US Census data, and accounts for people with mobility disabilities that do not necessarily require a scooter or wheelchair. *Id.* ¶¶ 15-20.

Courts, in the disability rights context, have certified classes where numerosity was established by statistical evidence and census figures. In *Park v. Ralph's Grocery Co.*, the plaintiffs established numerosity through evidence of the number of wheelchair users in California, the number of customers who shopped at the

13

1    defendant's stores, and evidence that class members would be difficult to identify

2    because they were geographically dispersed throughout the state. *Park*, 254 F.R.D. at

3    120 (disregarding the defendant's argument that the class was not "ascertainable" or

4    "manageable" because the plaintiffs could not identify all the potential class

5    members).  Likewise, the plaintiffs in *Berlowitz* successfully demonstrated numerosity

6    through the expert declaration of the same Dr. LaPlante who has applied his expert

7    knowledge to the facts of this case.  1996 WL 724776 at *3.  The *Berlowitz* court was

8    persuaded by Dr. LaPlante's determination that there was a "high statistical

9    probability" that several hundred California residents with mobility disabilities were

10   affected annually by a theater's practice of denying wheelchair users accessible

11   seating.  *Id.*; *see also Moeller*, 220 F.R.D. at 608 n.8 (collecting cases) (dismissing

12   defendant's argument that "census data is insufficient to establish numerosity"

13   because "'[c]ensus data [is] frequently relied on by courts in determining the size of

14   proposed classes'").  Here, likewise, Dr. LaPlante has used tourism and U.S. Census

15   Bureau data to arrive at a conclusion with respect to the size of the Proposed Class.

16   LaPlante Decl. ¶¶ 15-17.  The statistical evidence of numerosity that Plaintiffs present

17   here, like that in *Park*, *Berlowtiz*, and other cases, demonstrates that numerosity is

18   satisfied.

19           Further, that a class is geographically dispersed and class members are difficult

20   to identify supports class certification.  *Moeller*, 220 F.R.D. at 608 n.9; *Park*, 254

21   F.R.D. at 120.  Starline serves as many as 1 million passengers a year, and the vast

22   majority of these passengers are tourists visiting the southern California area.

23   Defendant's Answer to Complaint (Dkt. No. 12) ¶ 9 (conceding "Starline offers more

24   than 30 different tours and serves approximately 1 million passengers a year"); Kelly

25   Decl., Ex. 25 (Sapir Dep. 55:25-56:1; 103:16-104:23; 108:24-110:24).  These tourists,

26   including those with disabilities who use a wheelchair, come from all over the country

27   and the world.  *Id.* (Sapir Dep. 102:20-23).  Joinder and identification of these class

28   members would be impracticable, if not impossible, because of their sheer size and

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  their wide geographical dispersion.

2        For these reasons, there is sufficient numerosity for certification.

3        C.      Plaintiffs' Claims Are Based On Common Questions Of Law And Fact,

4                And Are Capable Of Classwide Resolution For Rule 23(a)(2) Purposes.

5        Commonality requires that "questions of law *or* fact [be] common to the class."

6  Fed. R. Civ. P. 23(a)(2) (emphasis added). Not all questions of law and fact must be

7  common; "[t]he existence of shared legal issues with divergent factual predicates is

8  sufficient, as is a common core of salient facts coupled with disparate legal remedies

9  within the class." *Hanlon*, 150 F.3d at 1019; *Arnold v. United Artists Theatre Circuit,*

10 *Inc.*, 158 F.R.D. 439, 448-49 (N.D. Cal. 1994) ("'The actions of the defendant need

11 not affect each member of the class in the same manner.' [Citation omitted]. Nor

12 must 'all questions of law and fact involved in the dispute be common to all members

13 of the class.'"). The putative class in *Hanlon*, for instance, alleged that they had been

14 damaged by the defendant car company's faulty manufacture of a latch. Commonality

15 in that case existed because "their claims stem[med] from the same source." *Hanlon*,

16 150 F.3d at 1019-20 (disregarding defendant's argument that commonality did not

17 exist because the class member had different avenues of redress).

18       Indeed, the Supreme Court recently reaffirmed that "for purposes of Rule

19 23(a)(2) '[e]ven a single [common] question' will do." *Wal-Mart*, 2011 WL 2437013

20 at *11 (internal quotations omitted). So long as Plaintiffs' claims "depend upon a

21 common contention [that is] of such a nature that it is capable of classwide resolution

22 - which means that determination of its truth or falsity will resolve an issue that is

23 central to the validity of each one of the claims in one stroke" - commonality is

24 established. *Id.* at *7. Here, Plaintiffs' claims are based on Starline's long-running

25 practice and policy of unlawfully discriminating against people with mobility

26 disabilities because of their disabilities. Plaintiffs' claims stem from this

27 discriminatory treatment - it is common to members of the Proposed Class, it denies

28 them access to Starline's tour services, and it is capable of classwide resolution.

1.     Starline's discriminatory policies and practices violate the
Americans with Disabilities Act and analogous California anti-
discrimination statutes.

Starline's discrimination against people with mobility disabilities raises issues of federal and state law common to all members of the Proposed Class.  Specifically, Starline's offenses violate Title III of the Americans with Disabilities Act (42 U.S.C. § 12181, *et seq.*), the Unruh Civil Rights Act (Cal. Civ. Code § 51, *et seq.*), the Blind and Other Physically Disabled Persons Act (Cal. Civ. Code § 54, *et seq.*), and the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*).

Title III of the ADA prohibits private entities providing transportation services from discriminating against people with disabilities and requires them to make "reasonable modifications" that are necessary to accommodate people with disabilities.  *See* 42 U.S.C. § 12182(a)-(b).  Specific to private entities that provide public transportation services, it is unlawful to discriminate on the basis of disability by failing to make reasonable modifications or remove barriers.  42 U.S.C. § 12184(a)-(b).  Further, Title III prohibits the operator of a fixed route bus system[2] from discriminating against people with disabilities by operating vehicles that are not readily accessible to or usable by people with disabilities.  42 U.S.C. § 12182(b).

Starline is subject to Title III of the ADA.  It is a private entity whose primary business is to provide bus tour services.  Kelly Decl., Ex. 25 (Sapir Dep. 55:16-17).  It operates its vehicles in fixed route systems, running them on predetermined routes and schedules that are announced to the public through Starline's website and promotional materials.  Kelly Decl., Exs. 13-14.  And Starline has failed to make reasonable accommodations and remove barriers to entry, leading to classwide discrimination against people with mobility disabilities.

---

[2] The ADA defines a "fixed route system" as "a system of providing transportation of individual (other than by aircraft) on which a vehicle is operated along a prescribed route according to a fixed schedule."  42 U.S.C. § 12181; *see also* 49 C.F.R. § 37.3.

California's Unruh Civil Rights Act and Blind and Other Physically disabled Persons Act both prohibit Starline's discrimination of people with mobility disabilities.  The Unruh Civil Rights Act guarantees all persons "full and equal accommodations" in all business establishments.  Cal. Civ. Code § 51(b).  Likewise, the Blind and Other Physically Disabled Persons Act provides disabled persons broad rights of access to "places to which the general public is invited," which includes "public conveyances or modes of transportation" and "places of public accommodation."  Cal. Civ. Code § 54.1(a)(1).  A violation of the ADA constitutes a violation of both of these California civil rights statutes.  Cal. Civ. Code §§ 51(f), 54(c).  Starline's discriminatory practices and policies violate the ADA, and thus violate these California statutes.

Further, Starline's violation of the ADA and the California civil rights statutes violates California's Unfair Competition Law ("UCL").  Cal. Bus. & Prof. Code § 17200.  The UCL prohibits any entity from engaging in "unfair competition," in the form of "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §§ 17200, 17201, 17203.  Starline's practices of discriminating against people with mobility disabilities and failing to make legally-mandated accommodations are both unlawful and unfair.  They are unlawful because they violate the aforementioned statutes.  *See Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999) (stating that the "unlawful" prong "borrows" violations of other laws and makes them independently actionable).  Starline's discriminatory policies and practices are also unfair because they violate the public policy codified in the ADA and California civil rights statutes that promote the removal of barriers imposed against people with disabilities.  *See id.*, 20 Cal.4th at 186-187 (describing an unfair act to be one tethered to "some legislatively declared policy" that threaten to violate a law, policy, or spirit of the law because "its effects are comparable to or the same as a violation of the law").  Starline's acts thus violate the UCL.

17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

2.     Plaintiffs' claims are based on Starline's discriminatory practices and policies that are common to the Proposed Class.

There are a number of questions of law and fact common to all members of the Proposed Class. Plaintiffs' claims are rooted in the common contention that Starline's services and vehicles operating in the Los Angeles region violate the ADA and analogous California statutes for not being accessible to people with mobility disabilities. Separately, all members of the Proposed Class have been injured in the same way by being denied access to Starline's tour services. Moreover, because of the commonality of the claims and injuries, adjudication of Plaintiffs' claims will resolve this central issue of discrimination against people with mobility disabilities in "one stroke."

Starline has engaged in a long-running practice of discrimination by failing to comply with explicit Title III laws and regulations governing accessibility. Pursuant to the ADA, no individualized analysis of need is required; rather, features of Starline's business, its tour services, the vehicles it uses—including the vehicles' date of manufacture and purchase—and the accommodations that can be made completely determine whether each bus and route complies with the ADA. *See* 49 C.F.R. § 38. Declaratory and injunctive relief will result in access for all members of the Proposed Class, regardless of their individual mobility disabilities.

In *Park*, questions of fact regarding the types of barriers that the putative class members encountered at the defendant's grocery stores were common. *Park*, 254 F.R.D. at 120. Despite the fact that the 90 stores which plaintiffs claimed were inaccessible possessed "unique architectural style" and were structurally diverse, the court held that the "alleged accessibility barriers affect[ed] all wheelchair users in the same way." *Id.* at 121 (collecting cases). The *Park* plaintiff's claims depended on the common contention that the defendant's grocery stores were inaccessible, resulted in the same injury to all members of the class, and could be resolved through classwide relief.

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The same is true for the Proposed Class.  Starline's failure to make its tours and vehicles accessible to people with mobility disabilities, and its employees' repeated refusal to provide services to people with mobility disabilities are questions common to the Proposed Class.  Further, Plaintiffs and other members of the Proposed Class have been affected by Starline's barriers to accessibility in a common way.  Their claims are rooted in these common factual experiences and common legal issues of federal and California law.  As a result, Plaintiffs have made the necessary showing of commonality under Rule 23(a)(2).

D.     Plaintiffs' Claims Are Typical Of Those Of The Proposed Class.

Rule 23(a)(3) requires the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The "'class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'"  *Arnold*, 158 F.R.D. at 449 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S. Ct. 2364 (1982)).  Typicality "assure[s] that the interest of the named representatives aligns with the interests of the class."  *Hanon*, 976 F.2d at 508.

As with the other Rule 23(a) requirements, "[t]he burden imposed by the typicality requirement is not great."  *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 510-11 (N.D. Cal. 2007) (citing *Hanlon*, 150 F.3d at 1020).  "Under [Rule 23(a)(3)]'s permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; *they need not be substantially identical*."  *Hanlon*, 150 F.3d at 1020 (emphasis added); *Arnold*, 158 F.R.D. at 449 ("The claims of the named plaintiffs need not be identical to the claims of the class[.]").  Demonstrating that the plaintiff's claims "arise from the same remedial and legal theories" as the class claims is sufficient for typicality.  *Id.* at 449.[3]

---

[3] The Rule 23(a)(2) commonality and Rule 23(a)(3) typicality requirements tend to merge.  *Wal-Mart*, 2011 WL 2437013 at *7 n.5.  As a result, evidence supporting one requirement frequently supports a finding of the other requirement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    Ms. Wheelchair California and Ms. Navarro meet the typicality requirement.

2   Both are members of the Proposed Class.  Their claims allege, and are extensively

3   intertwined, the same statutory violations that apply to the Proposed Class.  Further,

4   they have the same interests as those of the Proposed Class: *i.e.*, they seek access to

5   Starline's tours and services, which is exactly what the Proposed Class seeks.

6   Plaintiffs' interests are aligned with those of the Proposed Class, as neither Ms.

7   Wheelchair California nor Ms. Navarro may gain access unless there is relief

8   benefiting the entirely of the Proposed Class.  Finally, their claims are extensively

9   intertwined with those claims that apply to the Proposed Class.

10    Under similar circumstances in *Park*, the court found the typicality requirement

11   was satisfied because the plaintiffs, like the putative class, used wheelchairs for

12   mobility purposes and encountered discriminatory barriers and policies at defendant's

13   stores.  *Park*, 254 F.R.D. at 112; *see also Arnold*, 158 F.R.D. at 450 (finding typicality

14   when "there can be no question that these named plaintiffs possess the same interests,

15   have suffered the same alleged injuries, and rely on the same legal theories as the

16   other members of the proposed class").  As in *Park*, Plaintiffs have suffered the same

17   injuries as the Proposed Class and now seek the same type of relief the *Park* plaintiffs

18   sought.

19    Plaintiffs thus satisfy the requirements of Rule 23(a)(3) typicality.

20    E.    Plaintiffs And Class Counsel Will Fairly And Adequately Represent The

21       Interests Of The Class As Required By Rule 23(a)(4).

22    Finally, Rule 23(a)(4) requires the class representatives to "fairly and

23   adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts

24   evaluating adequacy look to whether the class representatives (1) have interests that

25   are in conflict with or antagonistic to those of the class, and (2) are represented by

26   qualified counsel.  *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight Motion*

27   *Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)); *Arnold*, 158 F.R.D. at 450.

28    Plaintiffs are adequate representative of the Proposed Class.  They both have

20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

standing under the ADA and California statutes. *See* Goldkorn ¶¶ 2, 4-10; Navarro Decl. ¶ 3. There can be no dispute that Plaintiffs qualify as persons with disabilities under Title III of the ADA, as their mobility restrictions substantially limit a number of major life activities including the ability to stand and walk. *Id.*; 42 U.S.C. § 12102; 49 C.F.R. § 37.3.

Ms. Wheelchair California has standing to represent the interests of the Proposed Class, as (1) its members would otherwise have standing to sue in their own right; (2) its interest in ensuring non-discriminatory access for its members is germane to its purposes as an organization; and (3) neither the claims asserted nor the relief requested require the participation of Ms. Wheelchair California's members in this action. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1109-1113 (9th Cir. 2003). But "once an association has satisfied *Hunt*'s first and second prongs assuring adversarial vigor in pursing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more." *United Food and Commercial Workers Union v. Brown Grp., Inc.*, 517 U.S. 544, 556 (1996).

First, Ms. Wheelchair California's members have standing to sue in their own right. Both Ms. Goldkorn and Ms. Williams, for instance, have mobility disabilities and use wheelchairs for mobility purposes. Goldkorn Decl. ¶ 2; Williams Decl. ¶ 2. Second, Ms. Wheelchair California's goals in this action are germane to its mission, which is to provide women, who happen to use wheelchairs, an opportunity to educate and advocate on behalf of people living with disabilities. Goldkorn Decl. ¶¶ 5-8. It represents the interests of people with disabilities, and seeks to promote equality and access by eliminating discrimination that negatively affects the disability community. *Id.* Finally, the claims asserted and relief sought in this action do not require the participation of individual members of Ms. Wheelchair California members, just like they do not require the participation of other members of the Proposed Class.

Plaintiffs also have no conflicts of interest with the Proposed Class. *See*

21

Goldkorn Decl. ¶¶ 21-24; Navarro Decl. ¶¶ 15-18.  Ms. Wheelchair California and its members actively educate and advocate on behalf of Americans living with disabilities.  Goldkorn Decl. ¶¶ 5-7.  Ms. Goldkorn has a mobility disability and is a wheelchair user.  *Id.*. ¶ 2.  Like Ms. Wheelchair California, she works as an advocate for the disability community through a number of organizations, including CDR.  *Id.* ¶ 3.  Likewise, Plaintiff Ms. Navarro uses a power wheelchair for mobility because of her disability.  Navarro Decl. ¶ 3.  She too is an advocate for the disability community.  *Id.* ¶¶ 4-10.  She is the founder and Executive Director of CALIF, an organization that provides people with disabilities assistance with various daily living issues.  *Id.* ¶¶ 4-7.  Plaintiffs are members of the class they seek to represent and have been actively involved in the matters of this case.  *Id.* ¶¶ 16-18; Goldkorn Decl. ¶¶ 21-24.  They are apprised of the case, have already taken the initiative to be named plaintiffs in this action, and will continue to vigorously prosecute on behalf of the Proposed Class.  *Id.*

The second element of Rule 23(a)(4) is also satisfied as the Proposed Class will be represented by qualified and competent counsel who will vigorously protect the interests of the class.  In appointing class counsel, courts must consider four elements: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  Plaintiffs' counsel satisfy these four requirements.

Kirkland & Ellis LLP and the Disability Legal Rights Center have done extensive work investigating and prosecuting Plaintiffs' claims and have considerable knowledge in complex class action litigation concerning legal issues like civil rights for people with disabilities.  Kirkland & Ellis LLP, named One of the Best Law Firms 2010 by US News Media Group, is a world-renowned firm experienced in high-stakes and complex litigation.  Kelly Decl., Ex. 17.  Guy Ruttenberg, Plaintiffs' lead counsel,

22

1  is a partner of the firm, and has tried numerous high-profile cases.  Kelly Decl., Exs.

2  18.  The Disability Legal Rights Center is a thirty-six year old organization whose

3  mission is to promote the rights of people with disabilities and the public interest by

4  creating awareness of those rights by providing legal and related services.  Declaration

5  of Paula D. Pearlman in Support of Plaintiffs' Motion for Class Certification

6  ("Pearlman Decl.") ¶ 3.  As such, the DRLC staff has extensive cumulative experience

7  litigating similar civil rights class actions.  *Id.* ¶¶ 4-8, 13-15.  Plaintiffs' counsel has

8  expended great efforts and resources in this action, and are more than capable of

9  protecting the interests of the Proposed Class.

10     F.     Certification Of The Proposed Class Is Appropriate Under Rule 23(b)(2)

11            Because The Primary Relief Sought Is Declaratory And Injunctive Relief.

12     Certification under Rule 23(b)(2) is appropriate when "the party opposing the

13  class has acted or refused to act on grounds that apply generally to the class, so that

14  final injunctive relief or corresponding declaratory relief is appropriate respecting the

15  class as a whole."  Fed. R. Civ. P. 23(b)(2).  The key to Rule 23(b)(2) certification is

16  "'the indivisible nature of the injunctive or declaratory remedy warranted - the notion

17  that the conduct is such that it can be enjoined or declared unlawful only as to all of

18  the class members or as to none of them.'"  *Wal-Mart*, 2011 WL 2437013 at *12.

19     This action fits squarely within the confines of Rule 23(b)(2).  Starline's

20  discriminatory policies and practices violate the ADA and other California statutes,

21  are the basis of Plaintiffs' claims, and apply generally to the Proposed Class.  As a

22  result, Plaintiffs seek declaratory and injunctive relief that applies to the entire

23  Proposed Class.  Under similar circumstances, the court in *Park* certified the putative

24  class under Rule 23(b)(2) because plaintiffs' allegations that defendant's stores had

25  common barriers to access demonstrated that defendant acted on grounds generally

26  applicable to the class.  254 F.R.D. at 123.  Likewise, Starline's repeated offenses are

27  not unique to Plaintiffs, but apply generally to the Proposed Class whose members

28  have shared the same experience of inaccessibility.

1    Rule 23(b)(2) certification is also warranted because the primary relief sought

2    by the Proposed Class is injunctive and declaratory relief.  The classwide relief sought

3    in this action is access to Starline's services.  This relief applies to the Proposed Class

4    generally, rather than to individual class members uniquely.  *See Wal-Mart*, 2011 WL

5    2437013 at *12 (stating that class certification is justified under Rule 23(b0(2) when

6    all members are entitled to the same injunction).  No classwide monetary relief is

7    sought in this action.  Whatever statutory minimum damages Plaintiffs may obtain

8    under their California law claims are merely incidental and not class-wide.  *Park*, 254

9    F.R.D. at 123; *see also Wal-Mart*, 2011 WL 2437013 at *13 (holding that Rule

10   23(b)(2) certification was unwarranted because the class asked for class-wide

11   monetary relief that was not incidental, but differed for each member of the class).  In

12   this case, injunctive and declaratory relief is the primary classwide relief sought.

13   In fact, the Supreme Court very recently reaffirmed its observation in *Amchem*

14   that "'[c]ivil rights cases against parties charged with unlawful, class-based

15   discrimination are prime examples' of what [Rule] (b)(2) is meant to capture." *Wal-*

16   *Mart Stores, Inc.* 2011 WL 2437013 at *12 (citing *Amchem Prods., Inc. v. Windsor*,

17   521 U.S. 591, 614, 117 S. Ct. 2231 (1997)); *Moeller*, 220 F.R.D. at 613 (same).  This

18   case concerns the civil rights of people with disabilities and has been filed against a

19   company that engages in a long-running, unlawful practice of discrimination.  It is

20   indeed one of the "'prime examples'" of when Rule 23(b)(2) certification is necessary.

21   For these reasons, certification of the Proposed Class under Rule 23(b)(2) is

22   appropriate.

23   **IV.    Conclusion**

24   Plaintiffs satisfy all of the elements required for certifying the Proposed Class.

25   For all the foregoing reasons, Plaintiffs respectfully request that the Court grant their

26   motion and certify this action as a class action.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

2    DATED:   June 28, 2011              By:   /s/ Guy Ruttenberg

3                                              Paula D. Pearlman
                                               Shawna L. Parks
4                                              Rebecca A. Craemer
                                               DISABILITY RIGHTS LEGAL
5                                              CENTER
                                               919 Albany Street
6                                              Los Angeles, CA  90017
                                               Tel:  (213) 252-7406
7

8
                                               Guy Ruttenberg
9                                              Ali-Reza Boloori
                                               Jason Kelly
10                                             KIRKLAND & ELLIS LLP
                                               333 South Hope Street
11                                             Los Angeles, CA  90071
                                               Tel:  (213) 680-8400
12

13
                                               *Attorneys for Plaintiffs and the*
14                                             *Proposed Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION