1  Paula D. Pearlman, State Bar No. 109038
   paula.pearlman@lls.edu
2  Shawna L. Parks, State Bar No. 208301
   shawna.parks@lls.edu
3  Rebecca A. Craemer, State Bar No. 274276
   rebecca.craemer@lls.edu
4  DISABILITY RIGHTS LEGAL CENTER
   800 South Figueroa Street, Suite 1120
5  Los Angeles, CA 90017
   Telephone: (213) 736-1334
6  Facsimile: (213) 736-1428

7  Guy Ruttenberg, State Bar No. 207937
   guy.ruttenberg@kirkland.com
8  Ali-Reza Boloori, State Bar No. 271489
   ali-reza.boloori@kirkland.com
9  Jason Kelly, State Bar No. 274144
   jason.kelly@kirkland.com
10 KIRKLAND & ELLIS LLP
   333 South Hope Street
11 Los Angeles, CA 90071
   Telephone: (213) 680-8400
12 Facsimile: (213) 680-8500

13 *Attorneys for Plaintiffs and Class Counsel*

14            **UNITED STATES DISTRICT COURT**

15           **CENTRAL DISTRICT OF CALIFORNIA**

16

17 MS. WHEELCHAIR CALIFORNIA              CASE NO. CV 11-2620-JFW (CWX)
   PAGEANT, INC., an organization, and
18 LILLIBETH NAVARRO, an individual, on   **MEMORANDUM OF POINTS AND**
   behalf of themselves and all others    **AUTHORITIES IN SUPPORT OF**
19 similarly situated,                    **PLAINTIFFS' MOTION FOR**
                                          **SUMMARY JUDGMENT**
20                        Plaintiffs,
                                          Hearing Date:        January 23, 2012
21            v.                          Hearing Time:            1:30 p.m.
                                          Judge:    The Honorable John F. Walter
22 STARLINE TOURS OF HOLLYWOOD,           Courtroom:           Courtroom 16
   INC., a business entity,               Discovery Cut-Off:   January 9, 2012
23                                         Pre-Trial Conference:    March 2, 2012
                        Defendant.        Trial Date:          March 20, 2012
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I. BACKGROUND FACTS ................................................................2

    A.    Starline Is A Private Sightseeing Tour Operator That Offers Tours To The General Public. ........................................................2

    B.    Plaintiffs' Experiences With Starline......................................3

    C.    The Vast Majority of Starline's Vehicles Are Inaccessible And, To The Extent Starline Provides Service To People With Disabilities At All, The Service Is Inferior And Unsafe. .........................................3

        1.    The overwhelming majority of Starline's vehicles are not accessible to wheelchair and electric scooter users. ..................4

        2.    Starline imposes service limitations on passengers with disabilities that it does not impose on other customers. .............6

        3.    Starline does not adequately provide the public information regarding wheelchair accessibility of its tour services. .............7

        4.    Starline does not properly train its employees about providing service to people with disabilities. ............................9

II. ARGUMENT................................................................10

    A.    The ADA's Statutory And Regulatory Scheme As Applied To Starline ........................................................11

    B.    Starline Is In Violation Of Section 12182 Of The ADA. ..................13

        1.    Starline discriminates against people with disabilities in violation of the ADA's general prohibitions. ..........................14

        2.    Starline discriminates against people with disabilities in violation of section 12182(b)'s specific prohibitions. ..............15

            a.    Starline's eligibility criteria and failure to make reasonable modifications in policies. ............................16

            b.    Failure to remove barriers that are readily achievable...17

    C.    Starline Is In Violation Of § 12182's Transportation-Specific

i

Protections For People With Disabilities ........................................... 19

    1.    Starline operates both fixed route systems and demand
responsive systems ................................................................. 19

    2.    Starline's fixed route systems violates section
12182(b)(2)(B). ....................................................................... 20

    3.    Starline's demand responsive systems violate
§ 12182(b)(2)(C). ..................................................................... 21

D.    Even If Starline Is Subject to Section 12184, Starline Discriminates
Against Wheelchair Users, As A Matter Of Law, In Violation Of
Section 12184. .......................................................................... 23

    1.    Starline would be subject to § 12184. ...................................... 23

    2.    Starline has violated section 12184's anti-discrimination
protections for people with disabilities. ................................... 24

    3.    Starline's purchase of inaccessible new vehicles is
discriminatory under section 12184(b)(3). ............................... 24

E.    Starline Has Violated California's Disability Rights Statutes. ........... 25

III.    CONCLUSION ........................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Lentini v. Cal. Center for the Arts,*
   370 F.3d 837 (9th Cir. 2004) ...................................................................... 10

*Spector v. Norwegian Cruise Line Ltd.,*
   545 U.S. 119 (2005)........................................................................... 13, 18

**Statutes**

42 U.S.C. § 12101 ............................................................................................ 11

42 U.S.C. § 12102 ............................................................................................ 10

42 U.S.C. § 12131 ............................................................................................ 13

42 U.S.C. § 12181 ..................................................................................... passim

42 U.S.C. § 12182 ..................................................................................... passim

42 U.S.C. § 12184 ....................................................................................... 23, 24

42 U.S.C. § 12186 ............................................................................................ 12

**Other Authorities**

Cal. Civ. Code § 51 .......................................................................................... 25

Cal. Civ. Code § 54 .......................................................................................... 25

**Rules**

36 C.F.R. § 1192.3 ............................................................................................ 20

49 C.F.R. Part 37 ...................................................................................... passim

49 C.F.R. Part 38 ...................................................................................... passim

1    Plaintiffs Ms. Wheelchair California Pageant, Inc. and Lillibeth Navarro

2    ("Plaintiffs") brought this lawsuit, on behalf of a certified nationwide class of

3    wheelchair and electric scooter users, to ensure that Defendant Starline Tours of

4    Hollywood, Inc. ("Starline"), the "oldest and largest sightseeing tour company in Los

5    Angeles, California," lives up to its obligations under Title III of the Americans with

6    Disabilities Act ("ADA").  The undisputed facts and unrebutted expert testimony

7    demonstrate that Starline has failed to do so in a variety of ways.

8    First, Starline has denied service to people with disabilities like the named

9    Plaintiffs here.  Second, the vast majority of Starline's vehicles (including new

10   vehicles purchased by Starline) contain no accessibility features whatsoever.  And

11   even those few vehicles in Starline's fleet that do have some accessibility features are

12   also in violation of the ADA.  While Starline has recently (during the course of this

13   litigation) included some makeshift ramps and securements areas, for example, these

14   features fall short of the ADA's minimum requirements and may pose a safety hazard

15   to people with disabilities who actually succeeded in boarding a Starline bus.  Third,

16   to the extent Starline allows Class Members to board its vehicles, it provides them

17   with an inferior level of service, imposing notice requirements to book tours that are

18   not imposed upon able-bodied passengers, and providing different tours on different

19   vehicles than able-bodied passengers can experience.  And finally, Starline fails to

20   meet the minimum requirements of the ADA for training their employees about how

21   to accommodate disabled passengers.

22   Starline does not meaningfully dispute any of these facts.  Starline has not, for

23   example, provided an expert report in response to Plaintiffs' expert report.  Instead,

24   Starline seems to believe that the law allows it to operate an inaccessible fleet of

25   vehicles, provide either non-existent or sub-par service to the disabled community,

26   and not train its employees.  Starline's reading of the law is wrong.  While there are

27   various competing statutory provisions of the ADA (as well as implementing

28   regulations) that could potentially apply to Starline and its various tours, the result is

1

the same regardless of which provisions and regulations apply:  Starline has violated the ADA (and, by extension, corresponding California statutes).  Summary judgment should be granted in favor of Plaintiffs and the Class, and further proceedings should be held to determine the scope of the injunction to which the Class is entitled.

## I.    BACKGROUND FACTS

### A.    Starline Is A Private Sightseeing Tour Operator That Offers Tours To The General Public.

Starline is a privately-owned corporation based in Los Angeles, California that is in the business of providing sightseeing tours.  Statement of Uncontroverted Facts ("SUF") ¶¶ 7-9, 12.  Starline has been in business since 1992.  SUF ¶ 10.  Today, Starline serves as many as 1 million passengers annually.  SUF ¶¶ 13.  It promotes its tours internationally and services passengers from outside California and the United States.  SUF ¶¶ 15-17.

Starline offers dozens of tours in California, including about 40 packages in southern California alone, and offers to pick-up passengers from most Los Angeles hotels for free.  SUF ¶¶ 14, 18-19.  These tours have predetermined start times, durations, and departure locations that Starline advertises.  SUF ¶ 20.  Passengers may board the vehicle at the start location, take the tour, and then are returned to the start location or their hotel.  SUF ¶ 20.  The Movie Stars' Homes Tour, for instance, is a 2 hour tour that runs year-round and departs from Grauman's Chinese Theater daily every 1/2 hour from 9:30 a.m. to sundown.  SUF ¶ 21.  While the routes for theses tours, like the Movie Stars' Homes Tour and Grand City Tour of Los Angeles, are not publicized on Starline's website or materials, drivers for these tours have run on the same route for years. SUF ¶¶ 31-34.

Starline also offers a "Hop-on, Hop-off" tour, whose "nature . . . is a bit different" from Starline's other tours.  SUF ¶¶ 22-23.  The Hop-on, Hop-off tour uses vehicles, including open-top London-style Double-Decker buses, that operate on prescribed routes and fixed schedules.  SUF ¶¶ 24, 25.  Starline offers 4 Hop-on, Hop-

off routes—red, yellow, purple, and blue—that it advertises through its salespeople and website. SUF ¶¶ 26-28. Vehicles for all four routes follow the route maps and timetables identified in Starline's promotional materials. SFU ¶ 29. Starline makes available to the general public a map that highlights the current routes for the Hop-on, Hop-off Tour, as well as each route's timetable. SUF ¶¶ 28, 30, 37.

Each route of the tour stops at various predetermined locations where passengers can "hop-on" or "hop-off" the vehicle. SUF ¶ 36. Passengers may, for a 24 or 48 hour-period—depending on which ticket they purchase—ride the Hop-on, Hop-off tour vehicle, "hop-off" at the predetermined stop, explore the area near the stop location, and then "hop-on" the next vehicle that comes by. SUF ¶¶ 35, 146. This gives passengers the freedom to create their own experience on the tour. SUF ¶ 35.

**B.    Plaintiffs' Experiences With Starline.**

Plaintiff Lillibeth Navarro uses a wheelchair for mobility as a result of contracting polio at the age of five months. SUF ¶ 1. In September 2010 and May 2011, Starline employees told Ms. Navarro, when she sought to take a Starline tour, that its vehicles could not accommodate her because of her wheelchair. SUF ¶¶ 2-3. Plaintiff Ms. Wheelchair California is an organization that advocates on behalf of women who use wheelchairs and generally represents the interests of people with disabilities (SUF ¶ 4), and was told by Starline in 2006, 2007, and 2009 that Starline could not accommodate wheelchairs. SUF ¶ 5. In February 2011, a Ms. Wheelchair California board member attempted to ride the Hop-on, Hop-off Tour and was told by Starline that a reservation is required and that she would not be permitted to "hop-on" or "hop-off" the van during the tour. SUF ¶ 6.

**C.    The Vast Majority of Starline's Vehicles Are Inaccessible And, To The Extent Starline Provides Service To People With Disabilities At All, The Service Is Inferior And Unsafe.**

Plaintiffs' experiences with Starline were not isolated incidents. Discovery in this case, including an inspection of Starline's vehicle fleet by an expert in the ADA,

has revealed that Starline systematically fails to meet its obligations under the ADA and state statutes. Most of Starline's vehicles have no accessibility features, and those that do are not accessible under the meaning of the ADA. To the extent Starline allows people with disabilities to board some of its vehicles, it offers inferior service to those passengers. And Starline fails to train its employees as to the ADA's requirements.

### 1. The overwhelming majority of Starline's vehicles are not accessible to wheelchair and electric scooter users.

Starline provides tours using a number of vehicles that are inaccessible to people who use wheelchairs or electric scooters for mobility. SUF ¶ 38. Starline owns or leases all the vehicles in its fleet. SUF ¶ 42.

Starline's fleet for the Hop-on, Hop-off tour is comprised of 25 vehicles (including double-decker buses), none of which were acquired before 2007. SUF ¶ 39, 40. Starline admits that 13 of these vehicles are inaccessible to disabled people. SUF ¶ 41. None of the double-decker vehicles have any mechanism that provides a wheelchair user to get onto the second level of the vehicle. SUF ¶ 43. Of the 12 remaining vehicles, 2 are out-of-service and partly disassembled. SUF ¶¶ 44-45.

Based upon the unrebutted expert inspection and findings, 2 of the 25 vehicles used for the Hop-on, Hop-off tour have wheelchair lifts (SUF ¶¶ 86, 92), and 8 have ramps. SUF ¶¶ 47, 52, 57, 61, 63, 65, 76, 81. Only two of the vehicles with ramps on them had those ramps at the time Starline acquired them. SUF ¶ 80. The other six vehicles have a manual ramp that Starline installed after acquiring the vehicle (the "Starline Ramp"). SUF ¶¶ 83, 95. Prior to 2011, none of the double-decker vehicles used by Starline for the Hop-on, Hop-off Tour were wheelchair accessible. SUF ¶ 144. Starline's Bus Conversion Manual indicates that these ramps were acquired from a company called Discount Ramps (www.discountramps.com). SUF ¶ 97.

The Starline Ramp is a quad-fold, manual aluminum ramp that must be unfolded and secured to the vehicle floor by the driver through two pins. SUF ¶¶ 95, 96. When fully deployed, the ramp is less than 30 inches long, has side barriers that

are less than 2 inches high, and has a gap running down the entire center of the ramp that would be hazardous to people with disabilities (particularly, users of 3-wheeled electric scooters).  SUF ¶¶ 98, 99.  The Starline Ramp is not easy to use or operate. *See* SUF ¶ 58.  Labels on the ramp indicate that the operator needs various training before deploying the ramp, and also state that a passenger can use the ramp only with the help of a "qualified assistant."  SUF ¶ 100.  Finally, there is no way to know whether the ramp is too steep to use safely without going through physical process of manually setting up the entire Starline Ramp.  SUF ¶ 101.  Each of these vehicles that have the Starline Ramp also do not have the required amount of wheelchair securement locations, adequate securement systems, or seatbelt systems, making them unsafe for people with disabilities to ride.  *E.g.,* SUF ¶¶ 49-50, 53-54, 59, 62, 66-67.

Starline uses 71 vehicles—vans, mini-buses, and transit buses—to provide all of its non-Hop-on, Hop-off tours.[1]  SUF ¶ 102.  57 of these vehicles are admittedly inaccessible to wheelchair and electric scooter users, and one has an inoperable wheelchair lift.  SUF ¶¶ 103, 125-26.  The remaining vehicles lack the necessary equipment, including up-to-date securement systems and seatbelt systems, for wheelchair users to safely access the vehicle.  *E.g.,* SUF ¶¶ 108, 110-113, 116-17, 119-23.  For instance, the securement locations on Trolley#2 and Trolley#3 use wheel clamp securement systems that can secure only limited types of wheelchairs and electric scooters, and they do not have seatbelt systems.  SUF ¶¶ 109-113.  The securement location on Trolley#2 is also side-facing.  SUF ¶ 110.  The lift on Vehicle #2218 has a spring-loaded end barrier that reduces the usable portion of the lift platform during loading, and requires continuous pressure on the spring in order to load onto the lift.  SUF ¶ 121.  Vehicle #321 does not have a seatbelt system for a passenger.  SUF ¶ 117.  And Vehicles #72 and #73 do not have wheelchair securement straps or seatbelt systems to accommodate all the securement areas on

---

[1] Four of these vehicles are used for Hop-on, Hop-off Tours (#56, #57, #58, #72). SUF ¶¶ 39, 102.

1    them.  SUF ¶¶ 94, 107-08.  Based on the unrebutted expert inspection, even the
2    vehicles with lifts on them lack necessary securement equipment and remain unsafe.

**2.      Starline imposes service limitations on passengers with disabilities that it does not impose on other customers.**

5    Unlike other members of the public, Starline requires that all wheelchair or
6    electric scooter using passengers provide Starline with an unclear amount of advanced
7    notice to take any tour, with contradictory statements from Starline indicating a notice
8    period ranging from 24-hours to one week.  SUF ¶¶ 128, 131, 133.  In June 2010,
9    Starline said it required at least one week of advanced notice for disabled people to
10   schedule a tour, although this information was not available on any of Starline's
11   marketing materials.  SUF ¶ 133.  At various times in 2011, Starline has indicated that
12   it requires that a wheelchair user provide at least 24 to 48 hours notice to make a
13   reservation for a Starline tour.  SUF ¶¶ 129, 130.  This is a different condition than the
14   policy applied to able-bodied people.  SUF ¶ 131.  In fact, Starline requires less notice
15   for a next-day hotel pick-up than it does a tour for people in wheelchairs.  SUF ¶ 132.

16   This difference in service is even more notable with respect to the Hop-on,
17   Hop-off Tour.  While able-bodied people are free to ride the tour without making any
18   reservation or providing any advanced notice, Starline, as a policy, requires all people
19   with disabilities who intend to ride the Hop-on, Hop-off tour to provide at least 24
20   hours advanced notice (or up to one week, as explained above).  SUF ¶¶ 134, 145.
21   But even if such advanced notice is provided, individuals using a wheelchair or
22   electric scooter are unable to receive anywhere near the same type or quality of
23   service provided to the general public.  The Hop-on, Hop-off Tour Starline provided
24   to people with disabilities—assuming they were actually offered service—was a tour
25   consisting of riding a separate van that did not follow the Hop-on, Hop-off Tour.  SUF
26   ¶¶ 135-36.  It also operated only twice a day and would not permit passengers to "hop-
27   on" or "hop-off" the vehicle at stops (which, as the name suggests, is the purpose of
28   the tour).  SUF ¶¶ 135-36.

6

Since this litigation commenced, Starline changed its Hop-on, Hop-off service for people with disabilities, but the tour provided remained a substantially different—and inferior—experience. Starline still required advanced notice only from people with disabilities. SUF ¶ 137. If wheelchair users wanted to "hop on" a bus at any stop and one of the few accessible vehicles was not around, the wheelchair user would need to find a Starline driver, tell the driver to call a dispatcher to send an accessible vehicle, and then wait for that vehicle to arrive. SUF ¶ 138. Starline believes that this process would take "half an hour to 45 minutes", although given the dearth of vehicles with accessibility features, even this estimate is questionable. SUF ¶ 138. Only one vehicle on any given route would be wheelchair accessible. SUF ¶ 139.

Today, Starline still requires at least 24 hours advance notice for people who use wheelchairs; no such requirement is imposed on other passengers. SUF ¶ 140. Starline now claims at least every other bus on its Hop-on, Hop-off tour is wheelchair accessible.[2] SUF ¶ 141. Even assuming half of Starline's Hop-on Hop-off vehicles are accessible (which is not borne out by the expert inspection), the Class would only be able to "hop-on" or "hop-off" half as many times as other passengers, visit only half as many locations as other passengers, and have half the flexibility as other passengers. Further, Starline advertises that passengers of the Hop-on, Hop-off tour can enjoy the tour's unique open-air experience from atop the double-decker vehicles. SUF ¶¶ 142, 143. Wheelchair or electric scooter users, however, still cannot enjoy this unique and highly-touted experience. SUF ¶ 43.

### 3. Starline does not adequately provide the public information regarding wheelchair accessibility of its tour services.

Starline fails to adequately disclose to people who use wheelchairs or electric scooters that they are subject to unique and onerous conditions when using or attempting to use Starline's services. Indeed, prior to the filing of this lawsuit,

---

[2] Plaintiffs dispute the "accessibility" of these vehicles, however, based on their physical inspection of the vehicles in Starline's fleet.

7

Starline did not disclose or advertise on any of its promotional materials—including brochures, pamphlets, and its website— that people with mobility disabilities are required to provide at least 24 to 48 hours' notice to take a tour.  SUF ¶ 149. Likewise, Starline did not disclose at its physical locations or through any public signage that it imposes these conditions on people with disabilities.  SUF ¶ 148. Starline's employees also told the general public that Starline could not accommodate wheelchair users because of their disabilities. *E.g.,* SUF ¶ 151.  People were also told by Starline's employees that they should contact TourCoach, Starline's sister company, to see if TourCoach could provide service in lieu of Starline. SUF ¶ 150.

Even after receiving Plaintiffs' complaint on March 29, 2011, Starline did not begin to disclose these requirements.  Recently, Starline has begun to disclose on its website that people who "require special accommodations" must provide Starline at least 24 hours advanced notice.  *E.g.,* SUF ¶ 134.  Starline's Hop-on, Hop-off Tour's promotional materials still, however, do not tell people with disabilities when they can expect to get service from wheelchair accessible vehicles.  SUF ¶ 180.

But Starline's advertisements on third-party promotional materials state affirmatively that *none* of Starline's services can accommodate people who use wheelchairs or electric scooters for mobility.  Starline advertises its tours on Hollywood CityPASS, an organization of which Starline is a part.  SUF ¶¶ 170, 71. Months after this litigation started, for at least one tour, Starline still advertised that "[p]assengers [are] required to ascend a few steps to board tour buses; lifts not available.  Wheelchairs may be checked at the Starline office for the duration of the tour."  SUF ¶ 173.  Indeed, even today, Starline's advertising, through CityPASS and other third-parties, still states that "[p]assengers [are] required to ascend a few steps to board tour buses; lifts not available."  SUF ¶¶ 174-76.  Starline continues to inform the disabled community, just as it informed Plaintiffs, that they must be able to climb steps in order to ride Starline vehicles.

8

4.   **Starline does not properly train its employees about providing service to people with disabilities.**

Starline does not provide proper, basic training to its employees on whether or how Starline's employees should provide service to wheelchair or electric scooter users ("ADA training"). *See* SUF ¶ 152. There is no set method for determining what the training should entail or when it should take place. SUF ¶¶ 153-56, 169. Further, Starline does not administer any test or assessment to determine whether employees have an adequate understanding of ADA-related issues. SUF ¶ 157.

Prior to early 2011, the only training Starline provided was to drivers about how to operate wheelchair lifts; no other employees received any ADA training. SUF ¶ 158. Only since Plaintiffs filed suit has Starline begun to provide any ADA training to its non-driver employees. SUF ¶ 159. Gwen Slaughter and Kim Faulkner are responsible for providing training to Starline's employees, but Starline did not require either receive any training or certification relating to ADA training. SUF ¶¶ 160-61.

The extent of Starline's ADA training is limited to the document: "Starline Tours & TourCoach Policy on Transporting ADA Passengers" ("ADA Policy"). SUF ¶¶ 163, 168. Kim Faulkner, the safety manager and administrative assistant, created the ADA Policy between 2010 and 2011 using, in part, materials from an old policy book from a company she used to work for that handled school buses. SUF ¶¶ 164, 165. Kim Faulkner trains only Starline drivers and supervisors, while Gwen Slaughter trains other Starline employees. SUF ¶ 166. Starline cannot identify any written policy regarding ADA training that it had prior to the creation of this "ADA Policy." SUF ¶ 167.

This "ADA Policy" does not reference Starline's own 24 hour policy for individuals with disabilities. *See* SUF ¶ 163. Nor does it include any specific information about Starline's specific tours and vehicles and their accessibility. *See* SUF ¶ 163. Nor does it reference how an individual who uses a wheelchair or electric scooter would be able to book a tour on an accessible vehicle, or how administratively

9

1    such vehicles would be reserved or supplemented into Starline's services has Starline

2    as claimed.  *See* SUF ¶ 163.  In fact, Starline's "ADA Policy" does not contain

3    information about what different types of Starline employee are required to learn if

4    Starline's services are to function as Starline has claimed.  *See* SUF ¶ 163.  Starline's

5    inadequate training likely stems from its belief that it has no legal obligation to train

6    its employees regarding handling passengers with mobility disabilities. SUF ¶ 162.

7    **II.     ARGUMENT.**

8           To prove a violation of the ADA, a plaintiff must show that he or she is an

9    individual with a disability and that, because of the disability, the person was denied

10   participation in or the benefit of a service provided by the defendant.  *Lentini v. Cal.*

11   *Center for the Arts*, 370 F.3d 837, 846-47 (9th Cir. 2004).  There is no dispute that the

12   named Plaintiffs and the Class here are individuals with disabilities as defined in 42

13   U.S.C. § 12102(1)-(2); indeed this Court has already so found.  Dkt No 57 at 2; Dkt

14   No. 25 ¶ 3; see also Dkt. No. 57 at 4 (certifying a class of "All persons who use

15   wheelchairs or electric scooters for mobility who are denied physical access to

16   Starline Tours of Hollywood, Inc.'s services on the basis of disability"). With respect

17   to the second part of the analysis—determining whether Starline has discriminated

18   against Plaintiffs and the Class in violation of the ADA—the particular standards that

19   Starline must satisfy under the ADA will depend on certain legal determinations that

20   this Court must make (including whether Starline is or is not "primarily engaged" in

21   the business of transporting people, and whether certain tours are "fixed route" or

22   "demand responsive").

23          But while there may be some dispute about which statutory provision applies to

24   which tour, there is no meaningful dispute about the facts:  (1) Starline has failed to

25   provide service to people who use wheelchairs or electric scooters for mobility; (2) to

26   the extent Starline actually allows people with such disability to board its buses, it

27   does so only by imposing discriminatory conditions, and then provides them with

28   inferior service; (3) Starline's fleet of vehicles is inaccessible to people with

1   disabilities, and to the extent the vehicles have any accessibility features at all, they do

2   not meet the minimum requirements of the ADA and pose safety hazards; and (4)

3   Starline does not provide basic training to its employees as to how to deal with

4   customers with disabilities.  Even under the least stringent standard for which Starline

5   might argue for here, each of these failures on Starline's part amounts to an

6   independent violation of the ADA.

7        The argument proceeds in three parts below.  First, Plaintiffs explain the ADA's

8   statutory and regulatory scheme as it applies to Starline.  Second, Plaintiffs apply the

9   statutory provisions and regulations that govern Starline, and explain that, based on

10  undisputed facts and unrebutted expert testimony, Plaintiffs are entitled to summary

11  judgment on their claim under the ADA (and by extension, their claims under state

12  law).  And third, Plaintiffs address why, even under alternative standards that could

13  potentially apply to Starline (and under which certain Starline's vehicles or tours

14  might arguably fall), Plaintiffs are still entitled to summary judgment.

15       **A.    The ADA's Statutory And Regulatory Scheme As Applied To**

16              **Starline**

17       The ADA intends to "provide clear, strong, consistent, enforceable standards

18  addressing discrimination against individuals with disabilities" in "critical areas" such

19  as "public accommodations [and] transportation."  42 U.S.C. § 12101.  Discrimination

20  under the ADA includes "outright intentional exclusions, the discriminatory effects of

21  architectural [and] transportation . . . barriers, [and] failure to make modifications to

22  existing facilities and practices."  42 U.S.C. § 12101(a).

23       Sections 12182 and 12184 of the ADA prohibit discrimination against people

24  with disabilities, including wheelchair and electric scooter users, by private entities

25  engaged in transportation services, like Starline.  Both prohibit private entities that

26  provide transportation from discriminating against individuals with disabilities in the

27  acquisition and use of inaccessible vehicles, the failure to maintain accessible features

28  in vehicles, the failure to make accessibility modifications when readily achievable,

1   the failure when making alterations to ensure that those alterations are accessible, the

2   failure to ensure that all staff are trained to proficiency in the requirements of the

3   ADA and overall, and the failure to provide the service provided to all members of the

4   public to individuals with disabilities in a manner that does not exclude or reduce

5   individuals with disabilities to a different level of service.

6          Both sections 12182 and 12184 have specific provisions detailing the extent to

7   which vehicles must be made accessible based on the different types of transportation

8   system used by the entity, fixed route, demand responsive, or over-the-road.  Both

9   sections 12182 and 12184 apply to operators of fixed route and demand responsive

10  transportation systems.  Additionally, the Department of Transportation ("DOT") and

11  Department of Justice ("DOJ") have both promulgated regulations providing further

12  interpretation and standards interpreting sections 12182 and 12184.  *See* 42 U.S.C.

13  § 12186.  The distinction between these two sections largely lies on whether the

14  private entity is "primarily engaged" in the business of transporting people.  This

15  makes a difference in the specific requirements for each vehicle used by the private

16  entity, depending on what transportation system it uses.

17         Starline is subject to, and in violation of, section 12182 because it is not

18  "primarily engaged" in the business of transporting people.  As the regulations clarify,

19  "[t]ransportation service provided by public accommodations is viewed as being

20  provided by private entities not primarily engaged in the business of transporting

21  people."  49 C.F.R. Part 37, App. D § 37.37.  This is consistent with Starline's multi-

22  faceted services, wherein transportation is only one of the components.  Because

23  Starline is not primarily engaged in the business of transporting people, Starline is

24  subject to section 12182(b)(2)(B) and (C).

25         But even if Starline were primarily engaged in the business of transporting

26  people, it would still be subject to and violating § 12184(a)-(b) of the ADA.  Starline

27  has failed to modify its policies and practices in order to accommodate wheelchair

28  users, has not removed physical barriers that are readily achievable, has acquired

12

vehicles that are not accessible to wheelchair users, and operates a transportation
system that does not provide people with and without disabilities equivalent level of
service.  Starline is, based on either of these two statutes, subject to and in violation of
the Department of Transportation's ADA regulations in 49 C.F.R. Parts 37 and 38.

### B.     Starline Is In Violation Of Section 12182 Of The ADA.

Section 12182 provides general and specific prohibitions against discriminating
against people with disabilities that apply to Starline.  It prohibits any person "who
owns, leases (or leases to), or operates a place of public accommodation" from
discriminating against individuals with disabilities "in the full and equal enjoyment"
of the services, facilities, privileges, and accommodations of "any place of public
accommodation."  42 U.S.C. § 12182(a).

Starline is a public accommodation and the vehicles its uses are places of public
accommodation.  *See* 42 U.S.C. § 12181(7).  Public accommodation covers a broad
range of private entities whose operations affect commerce, as evidenced by the wide
range of businesses in the term's statutory definition.  *See* 42 U.S.C. § 12181(7).
Starline meets these requirements.[3]  *See* 42 U.S.C. § 12182 (prohibiting
"Discrimination by Public Accommodations" and expressly covering operators of
vehicle transportation systems).

First, Starline is a privately owned for-profit company.  *See* 42 U.S.C.
§§ 12131(1), 12181(6); SUF ¶ 7.  Second, Starline's operations affect commerce by
serving upwards to 1 million passengers a year.  *See* 42 U.S.C. § 12181(1); SUF ¶ 13.
Starline solicits business through international conventions, and the majority of its
passengers come from out of state or are international.  SUF ¶¶ 15-17.  And finally,
the vehicles Starline operates to provide tour services fall within the statutory
definition of "public accommodation."  *See Spector v. Norwegian Cruise Line Ltd.*,
545 U.S. 119, 129-30 (2005).

---

[3] The Department of Justice, based on its investigation of Starline for violations of
section 12182, appears to agree that Starline is subject to, and in violation of, section
12182.  *See* SUF ¶ 183.

13

1     There is no genuine dispute of material fact that Starline violates § 12182's

2  anti-discrimination provisions.  Section 12182 prohibits discriminating against

3  individuals with disabilities in places of public accommodations.  It also specifically

4  encompasses private entities that operate transportation systems as places of public

5  accommodation with specific standards based on the type of transportation system that

6  private entity is operating.  *See* 42 U.S.C. § 12182(b)(1)-(2).  Plaintiffs begin by

7  showing that Starline has violated these prohibitions imposed by section 12182 before

8  addressing the transportation-specific violations.

9          **1.     Starline discriminates against people with disabilities in**

10                **violation of the ADA's general prohibitions.**

11     Forms of discrimination by public accommodation that section 12182 prohibits

12  include denying people with disabilities opportunity "to participate in or benefit from"

13  an entity's services, affording such people service "that is not equal to that afforded to

14  other individuals," and providing such people service "that is different or separate

15  from that provided to other individuals, unless such action is necessary."  42 U.S.C.

16  § 12182(b)(1)(A)(i)-(iii).  Starline has violated all three of these protections by

17  denying wheelchair and electric scooter users service, denying equal service, and

18  providing different levels of service.  Starline has done this by acquiring and using

19  inaccessible vehicles, refusing to maintain accessible features so they are useable and

20  safe, failing to make accessibility modifications that are readily achievable, and, when

21  making such alternations, ensuring that those alterations are accessible.  Physical

22  access for individuals with disabilities is measured by whether something is "readily

23  accessible to and usable by individuals with disabilities."  *See* 49 C.F.R. §§ 37.7(a).

24  Starline's services and vehicles have not been accessible

25     Starline has denied service to wheelchair users.  It concedes that its employees

26  have told disabled persons that Starline's tours cannot accommodate them because

27  they use wheelchairs.  *E.g.,* SUF ¶¶ 150-51, 184.  Starline's employees referred these

28  people to TourCoach on the basis of disability.  SUF ¶¶ 150-51, 179.  This is the same

discrimination that Ms. Wheelchair California was subject to. SUF ¶¶ 178-79.

Starline also has stated that people with disabilities must provide Starline with anywhere from 24 hours to one week advanced notice to take any tour when the same requirements are not imposed on able-bodied passengers. *E.g.,* SUF ¶¶ 128-30, 133-34. People with disabilities, assuming Starline actually does serve them, are afforded an inferior type and level of service. SUF ¶¶ 131, 134-38. This is especially evident with the Hop-on, Hop-off Tour. Previously, Starline provided only an entirely different and inferior level of service—ride in a separate, disabled passenger-specific vehicle and tour, cannot leave the vehicle, no open-air views, and tour runs only twice a day. SUF ¶¶ 135-36. Today, the experience remains unequal, as the most important and publicized characteristics of the tour—open-air views, unique perspective from the top-deck, flexible schedules, no need to provide advanced notice—are denied to people with disabilities. SUF ¶¶ 43, 137-38, 140-46.

### 2. Starline discriminates against people with disabilities in violation of section 12182(b)'s specific prohibitions.

Section 12182 also identifies specific forms of discrimination that are prohibited by § 12182(a). It is discriminatory:

- to impose "eligibility criteria" that tends to screen out people with disabilities from "fully and equally enjoying" any services, privileges, or accommodations, "unless such criteria can be shown to be necessary" to provide such service;

- to fail "to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford" such services, privileges, or accommodations to individuals with disabilities, "unless the entity can demonstrate that making such modifications would fundamentally alter the nature" of such services, privileges, or accommodations; or

- to fail "to remove . . . transportation barriers in existing vehicles . . . used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles . . . by the installation of a

hydraulic or other lift), where such removal is readily achievable."  If the entity can demonstrate that such barrier removal is not "readily achievable," then it still discriminatory to fail to make he services, privileges, or accommodations "available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(i)-(ii), (iv)-(v).  There is no genuine dispute of material fact that Starline has discriminated against people who use wheelchairs and electric scooters for mobility by violating these protections afforded by section 12182(a).

**a.**    **Starline's eligibility criteria and failure to make reasonable modifications in policies.**

Starline has imposed unlawful eligibility criteria and failed to make reasonable modifications to its policies and procedures relating to people with disabilities.  First, Starline's requirement that people "ascend a few steps to board" Starline's vehicles is an unlawful eligibility criteria that screens wheelchair and electric scooter users from "fully and equally enjoying" Starline's services.  SUF ¶¶ 170-76.  While some people who use wheelchairs due to disabilities may be able to ascend a few steps to get onto a vehicle, others—including Ms. Navarro and members of Ms. Wheelchair California—cannot, and are thereby screened out from enjoying any of Starline's service.  The same applies to Starline's use of eligibility criteria by failing to make the top deck of its highly-touted double-decker vehicles accessible.  SUF ¶¶ 43.

Second, Starline has required people with disabilities to schedule tours anywhere from 24 hours to one week in advance when no such requirement is imposed on people without disabilities.  *E.g.,* SUF ¶¶ 128-30, 133-34.  Indeed, it has imposed this advanced notice requirement on its Hop-on, Hop-off Tour—a tour that is designed to provide passengers the freedom to be flexible and not provide Starline *any* advanced notice or reservations.  SUF ¶¶ 137-38, 140, 145-46.

Third, Starline has failed to implement a training program that would ensure people with disabilities access to Starline's services.  Private entities operating transportation systems must "ensure that personnel are trained to proficiency, as

16

appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities."  49 C.F.R. § 37.173.  Starline's training program falls far short.  Starline's ADA training was created by Ms. Faulkner who has not received any ADA-related training for over 15 years and believes Starline is not subject to DOT regulations because its vehicles do not travel inter-state.[4]  SUF ¶¶ 161, 180.  No steps are taken to quality control the materials used for training—the content of the ADA training document Starline uses was made in part on searches of public websites and an out-dated manual from a school bus operator.  SUF ¶¶ 164-65, 180.  There is no method to training or retraining employees.  SUF ¶¶ 153, 155.  In fact, the first instance of ADA training provided to Starline drivers includes providing the driver to read Starline's ADA Policy while waiting alone at a drug testing center during the hiring process.  SUF ¶ 181.  Whether a Starline employee needs training is up to the judgment of the general manager, who makes the decision based on her own discretion.  SUF ¶¶ 154-56, 161.  There is no written training regarding the specific lifts, ramps, securements, and accessibility features on Starline's vehicles.  *See* SUF ¶ 163.  No ADA training documents specific to Starline's actual policies for providing access to people with disabilities.  And no training specific to the different roles of each employee for implementing Starline's policy toward people with disabilities.

> **b.**    **Failure to remove barriers that are readily achievable.**

Title III requires modifications to vehicles that bring them into compliance with the minimum guidelines provided by 49 C.F.R. Part 38 when "readily achievable."  *See* 42 U.S.C. § 12182(b)(2)(A)(iv)-(v ).  This is defined as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  The "readily achievable" standard is based on facts including the "nature and cost of the action," the resources available to the entity, and "the impact . . . upon the

---

[4] This is in sharp contrast to what Starline says in its motion for summary judgment. *See* Dkt. No. 99 at7 ("Defendant Starline's vehicles are covered by [ ] DOT regulations . . . .  The DOT regulations relevant to his action are codified at 49 C.F.R. Parts 37 and 38.").

1  operation of the facility."  *See* 42 U.S.C. § 12181(9); *see also Spector*, 545 U.S. at 135

2  (stating that "Title III does not define 'difficulty' in § 12181(9)").  Starline has not

3  removed all barriers that are readily achievable, as required by Title III.

4      Starline has the capability and resources to make more if its vehicles accessible

5  to wheelchair users, but it has not done so.  *E.g.,* SUF ¶ 82.  Starline concedes that

6  there are many vehicles in its fleet that it cannot identify any reason for not taking

7  steps to make accessible.  *E.g.,* SUF ¶¶ 84-85.  Vehicle #DD313, for instance, is

8  admittedly inaccessible to wheelchair users at the moment.  SUF ¶ 41.  But Starline

9  has no reason for not making the vehicle accessible.  SUF ¶ 69.  The same goes for

10  Vehicles #DD315 and #DD316.  SUF ¶¶ 71-72.  Some vehicles, in fact, Starline has

11  said it plans to make wheelchair accessible.  SUF ¶ 73.  This demonstrates that

12  removal of barriers is readily achievable.

13      Relatedly, Starline has put ramps on some of its double-decker vehicles, but

14  many are still without ramps.  *E.g.,* SUF ¶¶ 41, 83.  That fact that Starline has installed

15  all these ramps since this litigation began evidences that these modifications can and

16  should have been done.  In fact, Starline has the capability in-house to make vehicles

17  accessible.  SUF ¶¶ 91, 182.  It admittedly is capable of making Vehicle #57

18  wheelchair accessible, and admits that there is no reason why it could not make these

19  modifications now.  SUF ¶¶ 90-91.

20      Finally, many of Starline's vehicles that have ramps or wheelchair lifts do not

21  have adequate, or any, securement areas, securement mechanisms, or safety belt

22  systems that are required by 49 C.F.R. Part 38.  *E.g.,* SUF ¶¶ 49-50, 59, 87-88.  These

23  are used to ensure that passengers with disabilities and their mobility aids are secured

24  to the vehicle for their safety.  Many of the barriers that need to be removed derive

25  from improperly maintained, missing, or non-operable equipment.  *E.g.,* SUF ¶ 108

26  Modifying these deficiencies is readily achievable, as they are inexpensive and can be

27  done with minimal effort.  SUF ¶ 189.

28      For instance, the barriers created by an insufficient number or size of

18

securement areas could be removed by abstracting a row of seats in a vehicle to make
room for a wheelchair.  In a number of vehicles there were an adequate number of
securement areas, but Starline has installed additional seating over existing
securement areas.  *E.g.*, SUF ¶¶ 89, 116.  For those vehicles, the locking mechanisms
for the securements are already in place and Starline would only need to remove the
seating it installed. There are a number of transportation barriers whose removal could
be readily achieved, as required by Title III of the ADA, but have not been removed.

### C.    Starline Is In Violation Of § 12182's Transportation-Specific Protections For People With Disabilities .

Section 12182(b)(2)(B) and (C) makes it unlawful for any private entity to
discriminate against people with disabilities when it is not primarily engaged in the
business of transporting people and it operates either a fixed route or demand
responsive system.  *See* 42 U.S.C. § 12182(b)(2)(B)(i), (C)(i).

#### 1.    Starline operates both fixed route systems and demand responsive systems.

Starline operates both fixed route and demand responsive systems.

A fixed route system is "a system of providing transportation of individuals
(other than by aircraft) on which a vehicle is operated along a prescribed route
according to a fixed schedule."  42 U.S.C. § 12181(4).  There is no genuine issue of
material fact that Starline operates a fixed route tour—namely, the Hop-on, Hop-off
Tour.  The Hop-on, Hop-off Tour transports individuals by bus, including open-top
London Double-Decker buses.  SUF ¶ 25.  Starline operates along a prescribed route.
The tour includes four distinct routes—red, yellow, purple, and blue—that Starline
advertises on its promotional materials and website through a map that highlights the
routes for each Hop-on, Hop-off tour.  SUF ¶¶ 24, 26-30.  Third, the tour operates
according to a fixed schedule.  Each of the four routes follows a timetable that Starline
makes available to the general public, along with the tour route, through its
salespeople, promotional materials, and website.  SUF ¶¶ 24, 26-30.  These materials

1    identify the specific location and times for each stop on the Hop-on, Hop-off tour.

2          In contrast, a demand responsive system is defined as any non-fixed route

3    system.  42 U.S.C. § 12181(3) ("[A]ny system of providing transportation of

4    individuals by a vehicle, other than a system which is a fixed route system.").

5    Starline's other tours are demand responsive system.  Each of these tours has fixed

6    start times, start locations, and durations, but do not necessarily have prescribed

7    routes.  *See* SUF ¶¶ 31-34.

8          **2.    Starline's fixed route systems violates section 12182(b)(2)(B).**

9          It is discrimination for a private entity "to purchase or lease a vehicle with a

10   seating capacity in excess of 16 passengers (including the driver) for use on such

11   system, for which a solicitation is made after [August 25, 1990], that is not readily

12   accessible to and usable by individuals with disabilities, including individuals who use

13   wheelchairs."  42 U.S.C. § 12182(b)(2)(B)(i); 49 C.F.R. § 37.101(b).  A vehicle is

14   "accessible" when it complies with the requirements of 49 C.F.R. Parts 37 and 38.

15   *See* 49 C.F.R. § 37.3.  Part 37 implements the transportation-related provisions of the

16   ADA, while Part 38 provides the minimum accessibility guidelines and requirements

17   for Part 37.  49 C.F.R. §§ 37.1, 38.1; *see also* 36 C.F.R. § 1192.3.  For example, Part

18   38 provides that vehicles must have a wheelchair lift or ramp (49 C.F.R. § 38.23(a)),

19   must have two securement locations and devices if the vehicle is over 22 feet in length

20   (*id.*), and must have a passenger seat belt and shoulder harness that is not used in lieu

21   of a device which secures the wheelchair itself (49 C.F.R. § 38.23(d)(7)).  Further, the

22   securement systems must "limit the movement of an occupied wheelchair [ ] to no

23   more than 2 inches in any direction under normal vehicle operating conditions" (49

24   C.F.R. § 38.23(d)(5)), at least one securement location must be forward facing (49

25   C.F.R. § 38.23(d)(4)), and so forth.

26         All but one of Starline's vehicles used for the Hop-on, Hop-off Tour (#V72)

27   seats over 16 passengers (SUF ¶¶ 39, 185, 187), are owned or leased by Starline (SUF

28   ¶ 42), and were solicited after August 25, 1990 (SUF ¶ 40).  Section 12182(b)(2)(B)(i)

20

1   requires that each of these vehicles comply fully with the minimum guidelines in Part

2   38.  These vehicles, however, are not compliant, as stated in the undisputed expert

3   report.  *E.g.,* SUF ¶¶ 46-54,57-59, 61-67.  Indeed, there is no dispute that the vehicles

4   that Starline concedes are not accessible to wheelchair users do not comply with 49

5   C.F.R. Part 38.

6       Further, those vehicles that have wheelchair lifts and ramps also are not

7   compliant with Part 38's minimum guidelines.  The Starline Ramp, for instance, is

8   less than 30 inches wide, when 49 C.F.R. § 38.23(c)(2) requires ramps "have a clear

9   width of 30 inches," and has side barriers of 1.5 inches, when 49 C.F.R. Part

10  38.23(c)(4) requires each side of the ramp be "at least 2 inches high" to prevent

11  wheelchairs from slipping off.  SUF ¶ 99.  Vehicle #DD322, like many other Starline

12  vehicles, lacks a lap and shoulder seatbelt system, which 49 C.F.R. § 38.23(d)(7)

13  requires.  *E.g.,* SUF ¶¶ 50, 59, 62, 67, 77.  These precise failings are laid out in the

14  unrebutted inspection report of expert.  *E.g.,* SUF ¶¶ 50, 59, 62, 65, 67.  There is no

15  issue of disputed fact that Starline's Hop-on, Hop-off Tour vehicles violate the ADA.

16       **3.    Starline's demand responsive systems violate § 12182(b)(2)(C).**

17       Section 12182 details two prohibitions specific to private entities that operate a

18  demand responsive system that differ from §12184.  *See* 42 U.S.C. § 12182(b)(2)(C).

19  The first makes it unlawful for that entity to fail to operate the demand responsive

20  system "so that, when viewed in its entirety, such system ensures a level of service to

21  individuals with disabilities, including individuals who use wheelchairs, equivalent to

22  the level of service provided to individuals without disabilities."  42 U.S.C.

23  § 12182(b)(2)(C)(i).  Eight factors are used to determine whether equivalent level of

24  service is being provided.  49 C.F.R. § 37.105.  For a demand responsive system, the

25  factors are: response time, fares, geographic area of service, hours and days of service,

26  availability of information, reservation capability, constraints on capacity or service

27  availability, and restrictions priorities based on trip purpose.  *Id.*

28       Starline's demand responsive system does not provide equivalent level of

21

1    service based on these factors.  Starline's inability to respond timely to requests from

2    people with disabilities is evidenced by failures to provide service to customers absent

3    significant advance notice.  *See* SUF ¶ 6.  Between Starline's poor ADA training and

4    the limited accessibility of its fleet, Starline cannot provide reasonable response time

5    or service capacity.  *E.g.,* SUF ¶¶ 102-03.  This limited supply of vehicles is directly

6    relevant to Starline's policy that people with disabilities make advanced reservations.

7    This advance reservation requirement is unique to people with disabilities and makes

8    equal level of service in this case unrealistic.  SUF ¶¶ 145-46.  But without imposing

9    such a requirement, Starline's demand responsive system would be a logistical

10   nightmare—so few vehicles with lifts and ramps to supply so many tours and routes.

11   *E.g.,* SUF ¶¶ 41, 49-50, 53-54, 59, 62, 66-67, 103.   Even more daunting is the fact

12   that there are so many wheelchair lift-equipped vehicles that lack the seatbelts and

13   restraints necessary to ensure passenger safety.  *E.g.,* SUF ¶¶ 41, 49-50, 53-54, 59, 62,

14   66-67, 103.  While Starline's fleet is large enough to absorb a high volume of

15   customers, its fleet of accessible vehicles cannot.  *E.g.,* SUF ¶¶ 41, 103.  Starline's

16   demand responsive system, based on the findings of the undisputed expert report,

17   cannot provide equivalent level of service, as required by § 12182.

18        Second, it is unlawful under section 12182(b)(2)(C) for that entity to purchase

19   or lease—when solicitation was made after August 25, 1990—any "vehicle with a

20   seating capacity in excess of 16 passengers (including the driver)" that "is not readily

21   accessible to and useable by individuals with disabilities (including individuals who

22   use wheelchairs)."  42 U.S.C. § 12182(b)(2)(C)(ii).  Starline has violated this

23   provision as well.  The undisputed expert report demonstrates that Starline uses

24   vehicles acquired after 1990, with passenger capacity beyond 16 (SUF ¶ 185) that are

25   not "readily accessible" as defined by 49 C.F.R. Parts 37 and 38, in its demand

26   responsive systems (SUF ¶¶ 102, 185).

27        For instance, Starline's Trolley #1 has a seating capacity above 16 passengers

28   (SUF ¶ 185), was acquired after 1990, and is admittedly not accessible to wheelchair

1    users (SUF ¶ 103).  Trolley #3 also has a seating capacity above 16 passengers (SUF

2    ¶ 185), was acquired after 1990, and does not comply with 49 C.F.R. Part 38 (SUF

3    ¶ 113), thereby making it not readily accessible and usable by individuals with

4    disabilities.  It lacks, for instance, an lap and shoulder belt system.  SUF ¶ 113; *see* 49

5    C.F.R. § 38.23(d)(7).  Starline's demand responsive system violates section 12182.

6    **D.    Even If Starline Is Subject to Section 12184, Starline Discriminates**

7    **Against Wheelchair Users, As A Matter Of Law, In Violation Of**

8    **Section 12184.**

9    Alternatively, if this Court finds that Starline is primarily engaged in the

10   business of transporting people, and thus subject to section 12184 rather than 12182,

11   there still remains no dispute that Starline is still violating the ADA.

12   **1.    Starline would be subject to § 12184.**

13   Section 12184 prohibits discrimination against people with disabilities in the

14   full and equal enjoyment of specified public transportation services provided by any

15   "private entity that is primarily engaged in the business of transporting people and

16   whose operations affect commerce."  42 U.S.C. § 12184(a).  This provision applies to

17   entities that are private, "whose operations affect commerce," that provide "specified

18   public transportation services," and that are "primarily engaged in the business of

19   transporting people."  *See* 42 U.S.C. § 12184(a).

20   There is no dispute that Starline is a private entity whose operations affect

21   commerce.  *See* section I.A, *supra*.  And Starline provides "specified public

22   transportation services."  The ADA defines this as transportation by non-aircraft

23   conveyances (like bus) "that provides the general public with general or special

24   service (including charter service) on a regular and continuing basis."  42 U.S.C.

25   § 12181(10).  Starline provides the general public transportation services, and has so

26   continuously for years, through sightseeing tours and charter services on a daily basis.

27   SUF ¶¶ 8, 12, 20, 188.

28

23

2.    **Starline has violated section 12184's anti-discrimination protections for people with disabilities.**

Section 12184 makes it unlawful for a private entity primarily engaged in the business of transporting people to discriminate by:

- imposing eligibility criteria that tends to screen out individuals with disabilities "from fully enjoying the specific public transportation services provided by the entity," unless such criteria can be shown to be necessary."  42 U.S.C. § 12184(b)(1).

- failing to make reasonable modifications, consistent with § 12182(b)(2)(A)(ii), to policies, practices, or procedures when necessary to afford its services, privileges, and accommodations to individuals with disabilities.  42 U.S.C. § 12184(b)(2)(A); *see also* 42 U.S.C. § 12182(b)(2)(A)(ii).

- failing to remove barriers consistent with § 12182(b)(2)(A), including architectural and transportation barriers where such removal is readily achievable and use of alternative methods if removal is not readily achievable. 42 U.S.C. § 12184(b)(2)(C); *see also* 42 U.S.C. § 12182(b)(2)(A)(iv)-(v).

Because provisions do not differ from those in section 12182(b)(1)-(2), with the exception that they apply to entities primarily engaged in the business of transporting people, the same reasons detailed above demonstrate that Starline has violated these provisions. *See* section II.B.1, *supra*.

3.    **Starline's purchase of inaccessible new vehicles is discriminatory under section 12184(b)(3).**

It is discriminatory for an entity covered by section 12184 to purchase or lease a new vehicle (with a seating capacity of 8 or more passengers), when solicitation occurs after August 25, 1990), that is used "to provide specified public transportation" when the vehicle "is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."  42 U.S.C. § 12184(b)(3).  If the Court finds that Starline is primarily engaged in the business of transporting

1  people, Starline has violated this provision.

2        The most obvious example of Starline's violation of this provision concerns

3  Vehicle #DD322.[5]  Vehicle #DD322 is used for the Hop-on, Hop-off, its seating

4  capacity is over 8 passengers, and it was new when Starline acquired it.  SUF ¶¶ 39,

5  74, 185.  The solicitation occurred after August 25, 1990, and Starline uses it to

6  provide specific public transportation—just as it does with its other vehicles.  SUF

7  ¶¶ 39-40.  Based on the undisputed expert inspection, Vehicle #DD322 is not readily

8  accessible to and usable by people with disabilities because the vehicle does not

9  comply with 49 C.F.R. Part 38.  SUF ¶¶ 76-78.  Specifically, a vehicle over 22 feet in

10  length (which Vehicle #DD322 is) must have 2 securement locations on it; Vehicle

11  #DD322 has only one.  SUF ¶ 77.  Securement locations also must have lap and

12  shoulder seatbelts for passengers with disabilities; Vehicle #DD322 has no such

13  seatbelt securements.[6]  *Id.*

14        **E.**    **Starline Has Violated California's Disability Rights Statutes.**

15        Finally, Starline's violations of the ADA also constitute a violation of the

16  Unruh Civil Rights Act and the Blind and Other Physically Disabled Persons Act

17  under California law.  Cal. Civ. Code §§ 51(f), 54(c).  Starline's violations of the

18  ADA constitute independent violations of these statutes.

19  **III.**    **CONCLUSION**

20        For all the foregoing reasons, this Court should grant Plaintiffs' motion for

21  summary judgment and hold that Starline has violated the ADA, the Unruh Civil

22  Rights Act, and the Blind and Other Physically Disabled Persons Act.

23  DATED:  December 23, 2011     By:   */s/ Guy Ruttenberg*

24                                 Paula D. Pearlman

25                                 Shawna L. Parks
                               Rebecca Craemer
                               DISABILITY RIGHTS LEGAL

26   

27  ----
[5] This is not, however, the only violation, as at least two of Starline's large double-decker vehicles were acquired new.  SUF ¶ 11.

28  [6] The exception to this provision in section 12184(b)(3) does not apply to Vehicle #DD322, because this vehicle is used on the Hop-on, Hop-off Tour, which is a fixed route system.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CENTER
800 S. Figueroa St., Suite 1120
Los Angeles, CA  90017
Tel:  (213) 736-1334

Guy Ruttenberg
Ali-Reza Boloori
Jason Kelly
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA  90071
Tel:  (213) 680-8400

*Attorneys for Plaintiffs and Class
Counsel*