Paula D. Pearlman, State Bar No. 109038
paula.pearlman@lls.edu
Shawna L. Parks, State Bar No. 208301
shawna.parks@lls.edu
Rebecca A. Craemer, State Bar No. 274276
rebecca.craemer@lls.edu
DISABILITY RIGHTS LEGAL CENTER
800 South Figueroa Street, Suite 1120
Los Angeles, CA 90017
Telephone: (213) 736-1334
Facsimile: (213) 736-1428

Guy Ruttenberg, State Bar No. 207937
guy.ruttenberg@kirkland.com
Ali-Reza Boloori, State Bar No. 271489
ali-reza.boloori@kirkland.com
Jason Kelly, State Bar No. 274144
jason.kelly@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Plaintiffs and Class Counsel*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MS. WHEELCHAIR CALIFORNIA PAGEANT, INC., an organization, and LILLIBETH NAVARRO, an individual, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>STARLINE TOURS OF HOLLYWOOD, INC., a business entity,<br><br>               Defendant. | CASE NO. CV 11-2620-JFW (CWX)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT STARLINE TOURS OF HOLLYWOOD, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:     January 23, 2012<br>Hearing Time:     1:30 p.m.<br>Judge:   The Honorable John F. Walter<br>Courtroom:     Courtroom 16<br>Discovery Cut-Off:   January 9, 2012<br>Pre-Trial Conference:   March 2, 2012<br>Trial Date:     March 20, 2012 |

# **TABLE OF CONTENTS**

**Page**

I.    FACTUAL BACKGROUND ........................................................................ 1

II.   ARGUMENT.......................................................................................... 3

A.   Plaintiffs Have Ample And Dispositive Evidence That Starline Is In Violation Of Those Requirements Of The ADA That Starline Is Subject To. ................................................................................. 4

1.   Starline Incorrectly Limits Its Obligations To Section 12184 And The DOT Regulations When Starline Is, In Fact, Also Subject To Section 12182 And The DOJ Regulations. ............. 5

a.   Starline has not shown it is subject solely to section 12184. ........................................................................ 6

b.   Starline is subject to both DOT and DOJ regulations. ..... 7

2.   There Is No Material Dispute Of Fact That Starline has Violated The ADA And Its Underlying Regulations. ............. 10

a.   Starline is subject to, and has violated, section 12182(b)(2)(B)–(C). ...................................................... 10

b.   Even if Starline is subject to section 12184, there are outstanding factual issues as to whether Starline has modified its vehicles with the "readily achievable" changes necessary to provide accessibility. ................... 10

c.   Even if Starline is subject to section 12184, there is sufficient evidence to show that Starline purchased vehicles in "new" condition and has "remanufactured" others. ......................................................................... 12

3.   Starline is not entitled to summary judgment as to Ms. Navarro's claims for damages. ................................................ 13

B.   Plaintiffs Have Standing To Seek Injunctive Relief Under The ADA. ........................................................................................ 13

1.   The Supreme Court has instructed courts to broadly construe Plaintiffs' standing to privately enforce the ADA.................... 14

i

2.    Plaintiffs have suffered injury-in-fact and have standing.........14

3.    Starline's injury-in-fact arguments are not legally or factually supported.................................................................16

4.    Plaintiffs will suffer repeated injury and have standing. ..........17

5.    Plaintiffs have standing to challenge the violations on board the vehicles on behalf of themselves and the Class.................20

C.    Plaintiffs' Complaint Adequately Pleads Claims Of Starline's Violations Of The ADA And California Disability Rights Statutes...20

D.    Plaintiffs Do Not Claim Any Violation Outside The Applicable Limitations Period. ..............................................................21

III.    CONCLUSION .............................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chapman v. Pier 1 Import (U.S.) Inc.,*
631 F.3d 939 (9th Cir. 2011) ................................................................ 14, 20

*D'Lil v. Best Western Encina Lodge & Suites,*
538 F.3d 1031 (9th Cir. 2008) .................................................................... 14

*Doran v. 7-Eleven, Inc.,*
524 F.3d 1034 (9th Cir. 2008) ............................................................ 14, 20

*Gatto v Cnty. of Sonoma*
(2002) 98 Cal. App. 4th 744, 120 Cal. Rptr.2d 550 (Cal. Ct. App. 2002) ............... 22

*Kelley v. Mortgage Electronic Registration Sys., Inc.,*
642 F. Supp. 2d 1048 (N.D. Cal. 2009) ...................................................... 21

*Kemp v. Regents of Univ. of Cal.,*
C-09-4687 PJH, 2010 WL 2889224, at *7 (N.D. Cal. July 22, 2010) .................... 22

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ............................................................................ 14, 19

*Mitchell v. Sung,*
816 F. Supp. 597 (N.D. Cal. 1993) ............................................................ 23

*Molsbergen v. United States,*
757 F.2d 1016 (9th Cir.1985) .................................................................... 6

*Molski v. Kahn Winery,*
405 F. Supp.2d 1160 (C.D. Cal. 2005) ........................................................ 19

*Oliver v. Ralphs Grocery Co.,*
654 F.3d 903 (9th Cir. 2011) ................................................................... 20

*Olympic Club v. Underwriters at Lloyd's London,*
991 F.2d 497, 501 n. 11 ......................................................................... 22

*Pickern v. Holiday Quality Foods Inc.,*
293 F.3d 1133 (9th Cir. 2002) .................................................................. 15

*Providente v. City of El Monte,*
No. CV 09-3327 PSG (JWJx), 2009 WL 2514184, at *4 (C.D. Cal. Aug. 13, 2009)
................................................................................................................ 22

*Spector v. Norwegian Cruise Line Ltd.,*
545 U.S. 119, (2005) .............................................................................. 7

iii

*Swormstedt v. Santa Maria Valley R. Co.*,
   CV 04-0372 DSF (SHX), 2004 WL 5458405, at *3 (C.D. Cal. Apr. 13, 2004) ......... 6

*Toomer v. City Cab*,
   443 F.3d 1191 (10th Cir. 2006) .............................................................. 12

**Statutes**

42 U.S.C. § 12181 ................................................................................. 9

42 U.S.C. § 12182 ........................................................................... passim

42 U.S.C. § 12184 ........................................................................... passim

42 U.S.C. § 12186 ............................................................................ 7, 8

**Other Authorities**

28 C.F.R. § 36.102 ............................................................................... 8

28 C.F.R. § 36.104 ............................................................................... 9

28 C.F.R. § 36.202 ............................................................................... 7

28 C.F.R. § 36.310 ............................................................................... 8

28 C.F.R. Part 36.101 ........................................................................... 9

49 C.F.R. § 37.103 ............................................................................. 11

49 C.F.R. § 37.21 ................................................................................. 8

49 C.F.R. § 37.3 ................................................................................ 20

49 C.F.R. § 38.21 ........................................................................... 11, 12

49 C.F.R. §37.101 ............................................................................. 10

Cal. Civ. Code § 51 ............................................................................ 13

Cal. Civ. Code § 54 ............................................................................ 13

Cal. Code Civ. P. § 338 ....................................................................... 23

Cal. Code Civ. P. § 340 ....................................................................... 22

**Rules**

Federal Rule of Civil Procedure 8 ....................................................... 20

Starline has moved for summary judgment based on a skewed view of the law, and a misreading of the record. Among other things, Starline argues in its Motion that Plaintiffs have insufficient evidence to prove Starline is in violation of the ADA, Plaintiffs lack standing, and Plaintiffs have insufficiently pled Starline's violations of the ADA.  Each of these arguments fails.

*One*, Starline incorrectly attempts to narrow the scope of legal obligations under the ADA when Starline is, in fact, subject to § 12182 and the DOJ's regulations. But even if Starline's view of its obligations under the ADA was correct, Plaintiffs have sufficient evidence (and, as Plaintiffs' Motion for summary judgment explain, dispositive evidence) that Starline is in violation of the ADA.  *See* Dkt. No. 126.

*Two*, contrary to Starline's argument, Plaintiffs and the Class have Article III standing to pursue this action because they have suffered injury-in-fact from Starline's violations of the ADA and they intend to use Starline's services once they become accessible.  This is consistent with this Court's prior ruling that Plaintiffs have standing in this action.

*Three*, Plaintiffs have sufficiently pled their ADA claim by identifying the legal and factual bases of their claim.  Moreover, Plaintiffs provided Starline notice of those specific regulations that Starline is violating.

*Four*, Plaintiffs do not claim any violation outside the applicable limitations period, despite Starline's assertions to the contrary.  Further, this limitations period is not of importance to Starline's current violations of the ADA for which Plaintiffs seek injunctive relief.

This Court should deny Starline's Motion entirely.

## I.   FACTUAL BACKGROUND

Plaintiffs Ms. Wheelchair California Pageant, Inc. ("Ms. Wheelchair California") and Lillibeth Navarro (collectively, "Plaintiffs") filed their class action Complaint on March 29, 2011, against Starline seeking to remedy Starline's failure "to provide full and equal access to" Starline's services on the basis of their and the

Class's disabilities.  Statement of Genuine Issues of Material Fact ("SMF") ¶ 76.

Ms. Ruthee Goldkorn, on behalf of Ms. Wheelchair California, had contacted Starline by phone in 2006, 2007, and 2009 in hopes of organizing and scheduling a Starline tour for members of Ms. Wheelchair California, including herself.  SMF ¶¶ 15, 18, 21, 77.  On each occasion, Starline told Ms. Goldkorn that Starline could not accommodate Ms. Wheelchair California's members, including Ms. Goldkorn, because they use wheelchairs.  SMF ¶ 78.  In November 2010, Ms. Goldkorn again called Starline in hopes of scheduling a Hop-on, Hop-off Tour for Ms. Wheelchair California.  SMF ¶ 24, 77.  This time a Starline employee named Charlene represented to Ms. Goldkorn that Starline could accommodate wheelchair users.  SMF ¶ 24.  But when Laura Williams of Ms. Wheelchair California tried to confirm what Starline told Ms. Goldkorn by taking a Hop-on, Hop-off Tour, Ms. Williams was denied access to Starline's service.  SMF ¶ 79.  Further, Starline told Ms. Williams that, because she used a wheelchair, she would have to schedule a tour 24 hours in advance and the tour Starline would provide her would be different and inferior.  SMF ¶ 80  To date, Ms. Ruthee Goldkorn has never had the opportunity to board a Starline vehicle.  SMF ¶ 14

Likewise, Ms. Navarro has attempted to ride Starline's services at least 5 times, starting in 2003, before filing the Complaint.  SMF ¶ 33, 43, 52, 56.  On each occasion, Starline told her that its vehicles are not accessible to her because she uses a wheelchair.  SMF ¶ 33, 43, 52, 53.  She was told by Starline's employees that, in order for her to ride Starline's tour vehicles, she would need to get herself out of her wheelchair and climb up the vehicle's steps.  This is a physical impossibility for Ms. Navarro, however, because she contracted polio at the age of five months, cannot walk, and must use a power wheelchair for mobility.  SMF ¶ 81.  Even after this litigation began, Starline has refused Ms. Navarro service because of her disability.  In May 2011, Starline told her again Starline's vehicles are inaccessible.  SMF ¶ 82.  In June 2011, a Starline employee represented to Ms. Navarro that Starline could offer wheelchair accessible service— but only if Ms. Navarro made advance

arrangements—and then directed her to some vague location to book a tour.  SMF ¶91.  Ms. Navarro followed the employee's directions, but there was no such place for her to book her tour.  SMF ¶ 91.  To date, Ms. Navarro has never had the opportunity to board a Starline vehicle, which amounts to a complete denial of service to Ms. Navarro by Starline because Ms. Navarro is a wheelchair user.  SMF ¶ 32.

On July 28, 2011, this Court certified Plaintiffs' action as a class action against Starline, and ruled that Plaintiffs were adequate class representatives.  SMF ¶ 71.  The Court also ruled that Plaintiffs properly invoked federal jurisdiction because they suffered injury-in-fact and had standing.  SMF ¶ 83.  Both Plaintiffs, this Court ruled, had been denied service by Starline on the basis of disability, and both Plaintiffs intended to use Starline's services once Starline's vehicles became accessible.  SMF ¶ 83.  Plaintiffs continue to genuinely intend to use Starline's services once they become accessible to wheelchair users.

In November 2011, an expert inspected Starline's fleet of vehicles used to provide tour services and wrote an expert report summarizing his findings.  SMF ¶ 84.  This report and its findings were not rebutted or disputed by Starline.    SMF ¶ 85.  The report indicates that the overwhelming majority of Starline's vehicles do not have *any* accessibility equipment on them.  SMF ¶ 86-89.  And the few vehicles that do have wheelchair lifts or ramps on them remain inaccessible under the ADA because they have unsafe wheelchair ramps, have inadequate securement areas and securement systems, and lack necessary lap and shoulder restraints.  SMF ¶ 90.

## II.    ARGUMENT

Plaintiffs explain below why each of Starline's arguments is unavailing and requires denial of Starline's Motion.  First, Plaintiffs refute Starline's argument that its obligations under the ADA are limited only to section 12184 and the DOT's regulations is wrong.  In fact, Starline is also subject to provisions in section 12182, as well as regulations promulgated by the DOJ.  But even under Starline's incorrectly narrow interpretation of the ADA, Plaintiffs have ample and dispositive evidence that

1    Starline is, indeed, in violation of the ADA.

2         Second, Plaintiffs again demonstrate that they and the Class have Article III

3    standing.  Starline argues that Plaintiffs lack the requisite injury-in-fact and intent to

4    use Starline's services in the future.  This is unavailing.  As Plaintiffs explained, and

5    this Court agreed, during the class certification briefing (*see* SMF ¶ 83), Starline flat-

6    out denied Plaintiffs service solely because of their disabilities and use of wheelchairs.

7    Starline's assertion that discrimination and denial of service to people with disabilities

8    is not injury-in-fact, unless a plaintiff can identify specific characteristics of the

9    vehicle, like when it appears to have been acquired "new" or remanufactured by

10   Starline, is at odds with the protections provided by the ADA.  Also, there is more

11   than ample evidence that Plaintiffs and the Class are at risk of future harm.

12        Third, Plaintiffs' complaint sufficiently identifies the legal and factual bases of

13   Plaintiffs' ADA claim.  Starline's argument that it has not been provided notice of

14   specific regulations is disingenuous.  Moreover, Plaintiffs have already moved, in an

15   abundance of caution, to amend their pleadings to incorporate the findings of their

16   expert's report and allege even more particular violations of specific regulations.  *See*

17   SMF ¶ 92.  Starline's pleading-related arguments are unavailing.

18        And fourth, Plaintiffs explain why Starline's statute of limitations arguments

19   are baseless.  And in any event, they are inapplicable to Plaintiffs' request for

20   injunctive relief based on Starline's present violations of the ADA.

21        Starline is not entitled to summary judgment on any of its arguments.  For the

22   reasons explained below, this Court should reject all of Starline's arguments and deny

23   its Motion.

24   **A.    Plaintiffs Have Ample And Dispositive Evidence That Starline Is In**

25   **Violation Of Those Requirements Of The ADA That Starline Is**

26   **Subject To.**

27        Starline asserts in its Motion that it is subject only to section 12184 and the

28   DOT's regulations (Mot. at 6-9), that Plaintiffs lack evidence to demonstrate that

4

Starline violated the ADA (Mot. at 12-16), and that Ms. Navarro is not entitled to damages because Starline has not violated the ADA (Mot. at 22-23).  Plaintiffs first explain below why Starline is subject to more than just section 12184 and the DOT's regulations and is in fact, also subject to section 12182 and the DOJ's regulations.  Plaintiffs then demonstrate that they have ample and dispositive evidence (including an unrebutted expert report) that Starline violates the ADA.  Finally, Plaintiffs explain that STarline is not entitled to summary judgment as to Ms. Navarro's claims for damages because Starline has indeed violated the ADA.

**1.    Starline Incorrectly Limits Its Obligations To Section 12184 And The DOT Regulations When Starline Is, In Fact, Also Subject To Section 12182 And The DOJ Regulations.**

As an initial matter, Starline incorrectly aims to narrow the scope of the laws and regulations under the ADA it is obligated to comply with.  Mot. at 6-8.  Contrary to Starline's assertion, Starline's obligations are not limited just to section 12184.  Sections 12182 and 12184 prohibit private entities engaged in transportation services from discriminating against people with disabilities, including those who use wheelchairs and electric scooters for mobility.  *See* 42 U.S.C. §§ 12182, 12184.  Both statutes prohibit, among other things, the acquisition and use of inaccessible vehicles, the failure to make alterations to ensure that alterations to vehicles are accessible, the failure to make modifications regarding accessibility when readily achievable, and the failure to ensure that service provided to the public are provided to individuals with disabilities in a manner that does not exclude or reduce individuals with disabilities to a different level of service.  *Id.*

These statutes have specific provisions outlining and detailing the extent to which vehicles must be made accessible based upon the types of transportation systems (fixed-route or demand responsive) that the entity operates.  42 U.S.C. §§ 12182(b)(2)(B)-(C), 12184(b)(3), (5).  The distinction between these two sections, as they concern entities like Starline that operate transportation systems, largely lies

1  on whether the private entity is "primarily engaged" in the business of transporting

2  people.  42 U.S.C. §§ 12182(b)(2)(B)-(C), 12184(a).  This determines what specific

3  requirements each vehicle used by the private entity, depending on what transportation

4  system it is used for, must meet.

5          a.        **Starline has not shown it is subject solely to section**

6                  **12184.**

7        Starline argues that it is subject to section 12184, relying solely on Plaintiffs'

8  Complaint.  Mot. at 7:5–9.  This reliance is misplaced.  Starline does not acknowledge

9  that Plaintiffs, in fact, have alleged Starline is subject to both section 12182 and

10  section12184.  SMF ¶ 93.  A plaintiff may allege more than one legal theory in the

11  alternative, even if the theories are inconsistent.  *Molsbergen v. United States*, 757

12  F.2d 1016, 1019 (9th Cir.1985) ("a pleading should not be construed as an admission

13  against another alternative or inconsistent pleading in the same case."); *Swormstedt v.*

14  *Santa Maria Valley R. Co.*, CV 04-0372 DSF (SHX), 2004 WL 5458405, at *3 (C.D.

15  Cal. Apr. 13, 2004).  Overlooking this possibility, Starline improperly focuses on only

16  one portion of Plaintiffs' complaint.

17        Notably, Starline offers no offers evidence of its own why it is subject to solely

18  to section 12184.  For example, Starline does not explain why it is "primarily engaged

19  in the business of transporting people," as required by § 12184.  42 U.S.C. § 12184(a).

20  Given this state of evidence, Starline has failed as a matter of law to establish whether

21  and why it is subject to § 12184.

22        Plaintiffs, in their motion for summary judgment, have already established a

23  legal and factual basis for Starline being subject to section 12182,[1] and possibly

24  section 12184.  *See* Dkt. No. 126 at 10-14; *see also Spector v. Norwegian Cruise Line*

25  *Ltd.*, 545 U.S. 119, 129-30 (2005); 49 C.F.R. Part 37, App. D § 37.37

26  ("[t]ransportation service provided by public accommodations is viewed as being

27

28  [1] The DOJ appears to agree with Plaintiffs, as the DOJ is currently investigating Starline for violations of section 12182.  SMF ¶ 94.

6

1  provided by private entities not primarily engaged in the business of transporting

2  people").

3            **b.      Starline is subject to both DOT and DOJ regulations.**

4            The Department of Transportation ("DOT") and Department of Justice ("DOJ")

5  have both promulgated regulations providing further interpretation and standards for

6  sections 12182 and 12184.  *See* 42 U.S.C. § 12186(a)-(b); *see also* 49 C.F.R. Parts 37,

7  38; 28 C.F.R. Part 36.  Starline does not dispute that DOJ's regulations are entitled to

8  *Chevron* deference, just as DOT's regulations are.  *See* Mot. at 8-9.  While Starline

9  concedes that its vehicles are subject to the DOT's regulations (Mot. at 7-8), Starline

10  is wrong in asserting that it is not subject to the DOJ's regulations "that govern

11  modification of vehicles to remove barriers."  *Id.*  Starline is, in fact, subject to *both*

12  the DOT's regulations (49 C.F.R. Parts 37–38) and DOJ's regulations (28 C.F.R. Part

13  36).

14            Congress limited the DOT's ability to issue regulations to § 12182(b)(2)(B) and

15  (C), as well as § 12184 (other than subsection (b)(4)).[2]  *See* 42 U.S.C. § 12186(a)(1).

16  Regulations regarding the other subsections of section 12182 are governed by the

17  DOJ's regulations.  42 U.S.C. § 12186(b).  This includes sub-sections (a), (b)(1), and

18  (b)(2)(A) of section 12182.  *See id.*  The DOJ regulations largely mirror the

19  protections provided by the statutory text of Title III.  Section 12182(b)(1)(A)(i), for

20  instance, prohibits discrimination by subjecting people with disabilities "to a denial of

21  the opportunity of the [disabled] individual or class to participate in or benefit from"

22  the services or accommodations of the entity.  42 U.S.C. § 12182(b)(1)(A)(i).  The

23  DOJ's corresponding regulation prohibits the same type of discrimination, almost

24  verbatim.  28 C.F.R. § 36.202(a).

25            Starline is subject to these DOJ regulations, even though these regulations are

26  not under the DOT's purview.  Consequently, Starline is, regardless of whether it is

27  subject entirely to section 12182 or also parts of section 12184, subject to both the

28  ───────────────────

[2] These regulations are codified in Title 49 C.F.R. Parts 37–38

1    DOJ's and the DOT's regulations.[3]

2           Further, Starline's assertion that DOT's regulations prevail over DOJ's misses

3    the mark.[4]   Indeed, Starline has not pointed to *any* conflict between DOT's and DOJ's

4    regulations, insofar as Starline's vehicles are concerned.  As a matter of law, Starline

5    must comply with both.  Indeed, 49 C.F.R. § 37.21(c), cited by Starline, acknowledges

6    that an entity may be subject to both sets of regulations.  49 C.F.R. § 37.21(c) ("The

7    provisions of this part [*i.e.*, 49 C.F.R. Part 37] shall be interpreted in a manner that

8    will make them consistent with applicable Department of Justice regulations.").

9             **i.**     **The DOJ regulations carry out the mandates in**

10                  **section 12182(b)(2)(A).**

11          As explained above, Starline is subject to the DOJ's regulations under section

12   12182, including section 12182(b)(2)(A).  *See also* Dkt. No. 126 at 11-14.  Section

13   12182(b)(2)(A)(iv) and (v) require Starline to remove "transportation barriers in

14   existing vehicles . . . where such removal is readily achievable" and to make its

15   services and accommodations available through alternative methods if removal of a

16   barrier is not readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv)-(v).  The regulations

17   for these subsections were promulgated by the DOJ per Congress's instructions (*see*

18   42 U.S.C. § 12186(b)), and are codified in 28 C.F.R. Part 36.  *See* 42 U.S.C.

19   § 12186(b); *see also* 28 C.F.R. Part 36.101.

20          The ADA defines "readily achievable" as "accomplishable and able to be

21   carried out without much difficulty or expense."  42 U.S.C. § 12181(9).   This is

22   _____

23   [3] This is further supported by 28 C.F.R. § 36.310, which provides that "[a] public accommodation subject to this section shall comply with the requirements pertaining

24   to vehicles and transportation systems in the regulations issued by the Secretary of Transportation pursuant to [42 U.S.C. § 12186]."  This regulation states that some

25   entities subject to DOJ regulations would also have to comply with DOT regulations.
     [4] Incidentally, much of Starline's supporting citations are irrelevant to this issue.  *See*

26   Mot. at 8.  For instance, Section 12186(b) merely clarifies that the DOJ and DOT regulations are complementary.  28 C.F.R. § 36.102(b)(2) confirms that Starline must

27   comply with the relevant portions of the DOJ regulations with respect to its operation of places of public accommodation—*i.e.*, its vehicles.  Finally, 28 C.F.R.

28   § 36.304(g)(3) and § 36.310 are wholly unrelated to whether DOT's regulations prevail over DOJ's.

1    determined by conducting a fact-intensive analysis that includes "the nature and cost

2    of the action" required by the ADA and "the overall financial resources of the facility

3    or facilities involved in the action."   *Id.*   The DOJ's regulations provide the same

4    definition of "readily achievable" and use similar criteria to measure this standard.  28

5    C.F.R. § 36.104.

6             **ii.     The DOJ regulations also carry out the mandates**

7                       **in section 12184(b)(2).**

8             As explained above, Starline may also be subject to 42 U.S.C. § 12184.  *See*

9    *also* Dkt. No. 126 at 11-13, 23.  If this is the case, Starline is not—as Starline claims

10   in its Motion—subject only to the DOT's regulations.  *See* Mot. at 7-8.  In fact,

11   Starline would be subject, to some extent, to the DOJ's regulations.  Although section

12   12186(a)(1) provides that the DOT issues regulations carrying out section 12184,

13   section 12184(b)(2), *inter alia*, requires an entity subject to section 12184 to "remove

14   barriers consistent with the requirements of section 12182 (b)(2)(A)."  42 U.S.C.

15   § 12184(b)(2)(C).  That is, section 12184(b)(2) incorporates the requirements imposed

16   by section 12182(b)(2)(A), which, as discussed above, is under the DOJ's regulation-

17   making authority.

18            Effectively, the result is that Starline's statement that it is "not subject to any

19   regulations issued by the DOJ that govern modification of vehicles to remove

20   barriers" is incorrect.  *See* Mot. at 7-8.  In fact, whether Starline is subject to section

21   12182 and/or section 12184, Starline is subject to and must comply with regulations

22   promulgated by the DOJ.  This conclusion is consistent with what Congress provided

23   in section 12186(a)(3).  By its terms, section 12186(a)(3) does not limit the rule-

24   making authority for sections 12182 (b)(2) and 12184 to the DOT.  Rather, it states

25   that the rules promulgated by the DOT shall include certain standards (*e.g.,* the DOJ's

26   regulations in 49 C.F.R. Part 38).

27

28

## 2.     There Is No Material Dispute Of Fact That Starline has Violated The ADA And Its Underlying Regulations.

Starline argues that it is entitled to summary judgment because Plaintiffs cannot demonstrate that Starline violated the ADA or its underlying regulations.  *See* Mot. at 12.  Starline further argues that Plaintiffs are required to, and cannot, demonstrate that the specific inaccessible vehicles Plaintiffs were denied access to must comply with the ADA.  *See* Mot. at 15-16.  These arguments are unavailing, and should be rejected by this Court for several reasons, most of which are explained in greater detail in Plaintiffs' motion for summary judgment.  *See* Dkt. No. 126.

### a.     Starline is subject to, and has violated, section 12182(b)(2)(B)–(C).

First, as discussed above, Starline is subject to 42 U.S.C. § 12182(b)(2)(B)-(C).  *See also* Dkt. No. 126 at 19-23.  Consequently, all of Starline's fleet—new and used vehicles alike—must comply with 49 C.F.R. Part 38.  42 U.S.C. § 12182(b)(2)(B)-(C); 49 C.F.R. §37.101.  Starline has conceded that the vast majority of its vehicles, used in both fixed-route and demand-responsive tours, do not contain any accessibility features on them. SMF ¶¶ 86, 95 (identifying in Exhibits C that nearly all of Starline's vehicles lack accessibility equipment).  The inaccessibility of these vehicles was confirmed by Plaintiffs' expert inspection, which yielded an undisputed expert report.  SMF ¶ 86, 88, 89.  Regarding the minority of Starline vehicles equipped with some type of ramp or lift for people with mobility disabilities, they lack adequate features that would render them accessible and safe for use by individuals with disabilities, as spelled out by 49 C.F.R. Part 38.  SMF ¶ 90.

Importantly, this information was derived from Plaintiffs' expert inspection of Starline's fleet of vehicles, and provided in Plaintiffs' expert report that Starline has chosen not to rebut or dispute.  SMF ¶ 95.  The expert's opinions are not challenged and the § 12182(b)(2)(B)-(C) violations are supported by undisputed evidence.

### b.     Even if Starline is subject to section 12184, there are

10

**outstanding factual issues as to whether Starline has modified its vehicles with the "readily achievable" changes necessary to provide accessibility.**

Alternatively, even if Starline is subject to section 12184, Starline is obligated to take steps to ensure that its vehicles are accessible; something it has failed to do. *See also* Dkt. No. 126 at 23-25. First, all of Starline's new vehicles must comply with 49 C.F.R. Part 38. 49 C.F.R. §37.103 requires that an entity that is "primarily engaged" to "ensure that [each of its new] vehicles is readily accessible to and usable by individuals with disabilities." 49 C.F.R. § 37.103. And 49 C.F.R. § 38.21(a) clarifies that, to be considered accessible under 49 C.F.R. Part 37, a vehicle must comply with the provisions of 49 C.F.R. Part 38. 49 C.F.R. § 38.21.

Second, *all* of Starline's vehicles—new and used alike—at the very least must comply with section 12184(b)(2)(C), which incorporates the requirements of section 12182(b)(2)(A). At the very least, Starline must remove "transportation barriers in existing vehicles . . . (not including barriers that can only be removed through the retrofitting of vehicles . . . by the installation of a hydraulic or other lift), where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv) (as incorporated by § 12184(b)(2)(C)). In other words, section 12184(b)(2)(C) imposes the same requirements on Starline that are required by section 12182(b)(2)(A). *Id.*

The "readily achievable" standard involves a factual inquiry about, *inter alia*, the nature and cost of the action needed and Starline's overall financial resources. 42 U.S.C. § 12181(9) (defining "readily achievable."). Plaintiffs have provided, through their expert, evidence of modifications to Starline's fleet that are readily achievable. *E.g.,* SMF ¶ 96.[5] Starline, by contrast, has offered no evidence to the contrary.[6]

---

[5] Notwithstanding the provision that installation of lifts are not required, Plaintiffs' expert has shown that installation of ramps, such as that developed by Starline itself, is "readily achievable" and therefore must be done on all Starline vehicles capable of having ramps. SMF ¶ 97.

[6] Indeed, Starline has waived its right to designate a rebuttal expert due to its failure to designate a rebuttal expert witness and provide a rebuttal expert witness report by the disclosure deadline of November 29, 2011. *See* Dkt. Nos. 89, 95.

1    Starline is not entitled to summary judgment on the grounds that Starline does not

2    violate section 12184.

3           Starline relies on 36 C.F.R. § 1192.21(b) (also appearing as 49 C.F.R. §

4    38.21(b)) to argue that entities subject to §12184 are not required to modify any

5    vehicle to make it accessible to wheelchair users.  Mot. at 12-13.  This reliance is

6    misplaced.  49 C.F.R. § 38.21 applies in cases where interiors of a bus are modified in

7    a way that affects or could affect accessibility, and states that "this provision [*i.e.*, 49

8    C.F.R. § 38.21(b)] does not require that inaccessible buses be retrofitted with lifts,

9    ramps or other boarding devices." 49 C.F.R. § 38.21(b).  But this provision is silent

10   as to what the other provisions (namely, those in §12184(b)(2)(A), §12182(b)(2)(A),

11   and 49 C.F.R. Part 37) require in the way of accessibility.  Obviously, 49 C.F.R.

12   §38.21(b) cannot mean that if a vehicle is modified in a way affecting its accessibility,

13   then there is no requirement that it be accessible.  Such a faulty interpretation would

14   result in sections 12184(b)(2)(A) and 12182(b)(2)(A) being made meaningless,

15   because an entity, by modifying a vehicle, could ensure that it is never required to

16   install any ramp or lift on the vehicle—and without a ramp or a lift, no other

17   accessibility feature would be needed.

18                 **c.      Even if Starline is subject to section 12184, there is**

19                          **sufficient evidence to show that Starline purchased**

20                          **vehicles in "new" condition and has "remanufactured"**

21                          **others.**

22          Starline claims that Plaintiffs have no evidence that Starline purchased its

23   vehicles as new.  Based on the documents thus far produced by Starline, it is apparent

24   that Starline has purchased at least 17 of its vehicle in "new" condition—i.e., without

25   prior use.  *Toomer v. City Cab*, 443 F.3d 1191, 1195-96 (10th Cir. 2006) (defining

26   "new vehicle" as one without prior use.)  SMF ¶¶ 11, 74, 103.[7]

27   ─────────────
     [7] Starline has produced documents to the DOJ including information about whether it
28   purchased its vehicles as new or used.  *See* SMF ¶ 94, 102.  It has not yet provided
     those documents to Plaintiffs, despite an outstanding Request for Production.

Of these, at least two are available for Starline's Hop-on, Hop-off tour, a fixed-route service.  SMF ¶¶11, 74.  The rest are available for all other Starline tours (which may be fixed-route and demand-responsive.)  SMF ¶ 102.

### 3. Starline is not entitled to summary judgment as to Ms. Navarro's claims for damages.

Finally, Starline incorrectly argues that Ms. Navarro is not entitled monetary damages under the Unruh Act (Cal. Civ. Code § 51) and Blind and Other Physically Disabled Persons Act (Cal. Civ. Code § 54), because "Plaintiffs cannot prove a violation of the ADA."  Mot. at 22.  As demonstrated above, Plaintiffs have dispositive evidence of Starline's violations of the ADA.  Starline does not dispute that "providing that a violation of the ADA constitutes a violation of California law."  Mot. at 22 (citing Cal. Civ. Code § 51(f) (Unruh Act); Cal. Civ. Code § 54.1(d) (Disabled Persons Act)).  Here, Starline's violations of the ADA constitute violations of these two California statutes.  Starline's argument thus must be rejected.

### B. Plaintiffs Have Standing To Seek Injunctive Relief Under The ADA.

Starline concedes that this Court has already rejected Starline's standing arguments once in July 2011.  Mot. at 17; *see also* SMF ¶ 83.  Starline now challenges Plaintiffs' standing again with arguments that are very similar to those it put forward—and had rejected—previously.  *Compare* SMF ¶ 83 (rejecting Starline's standing arguments that Plaintiffs have not been injured and do not intend to use Starline's services) *with* Mot. at 17-22.  Nothing since July 2011 warrants disturbing this Court's decision that Plaintiffs have standing.

Starline claims Plaintiffs lack standing because (1) Plaintiffs have not suffered injury-in-fact because they cannot show that the particular vehicles they inquired about were required to be accessible, (2) Plaintiff Ms. Wheelchair California did not suffer injury-in-fact because it did not intend to book a tour at the time it contacted Starline, and (3) neither Plaintiff has standing to seek injunctive relief because neither has an intention to use Starline's services in the future.  *See* Mot. at 18, 20.

1    These three arguments are legally and factually unavailing, however.  Starline's

2    violations of the ADA stem from its refusals to provide people with disabilities

3    service on its tours because of their disabilities.  And in any event, neither Plaintiff

4    (nor any member of the Class) sought to board any specific or particular vehicle (*e.g.,*

5    a 24-passenger van acquired used before 1990); rather they sought to ride Starline's

6    tours and were categorically denied because they use a wheelchair.  This violates the

7    ADA.  Further, Starline's violations of the ADA in refusing to provide service give

8    Plaintiffs standing to challenge the violations on board the vehicles on behalf of the

9    Class and themselves. Starline's challenges to Plaintiffs' standing should be rejected.

### 1.      The Supreme Court has instructed courts to broadly construe Plaintiffs' standing to privately enforce the ADA.

12    "[T]he 'Supreme Court has instructed [courts] to take a broad view of

13    constitutional standing in civil rights cases, especially where, as under the ADA,

14    private enforcement suits "are the primary method of obtaining compliance with the

15    Act."'"  *Chapman v. Pier 1 Import (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011)

16    (collecting cases); *see also D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d

17    1031, 1036 (9th Cir. 2008).  There is standing when a plaintiff has suffered an injury-

18    in-fact, the injury is traceable to the defendant's actions, and a favorable decision can

19    redress the injury.  *E.g., id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555,

20    560-61 (1992).  In the ADA context, a person with a disability possesses standing

21    when he "has encountered or become aware of alleged ADA violations that deter his

22    patronage of or otherwise interfere with his access to a place of public

23    accommodation".  *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n.5 (9th Cir. 2008).

### 2.      Plaintiffs have suffered injury-in-fact and have standing.

25    "Injury-in-fact" is an invasion of a legally-protected interest that is concrete and

26    particularized, and "actual *or* imminent." *Lujan*, 504 U.S. at 560-61 (emphasis added).

27    "Actual injury" in ADA Title III cases can occur when a person with a disability is

28    currently deterred from patronizing a defendant due to its noncompliance with the

14

1  ADA.  *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137-38 (9th Cir.

2  2002).  "Imminent harm" comes from a defendant's existing or imminently threatened

3  ADA noncompliance causing a future threat of harm.  *Id.*

4         In this case, Starline has caused both Plaintiffs injury-in-fact, as Starline has

5  denied them service to its tours and Starline operates a fleet of vehicles that are

6  admittedly inaccessible and not in compliance with the ADA.  *See* SMF ¶ 86-90.  Ms.

7  Navarro was told by Starline on numerous occasions between 2003 and 2011—

8  including in May 2011, which was *after* this litigation as filed—that Starline's

9  vehicles are not accessible to her because she uses a wheelchair.  SMF ¶ 33, 43, 52,

10  56, 82.  In June 2011, a Starline employee represented to Ms. Navarro that Starline

11  could provide accessible service, but she had to make a reservation in advance and

12  had to go to some vague location to book a tour.  SMF ¶ 91.  Ms. Navarro followed

13  the employee's directions, but there was no such place for her to book her tour.  SMF

14  ¶ 91.  To date, Ms. Navarro has never had the opportunity to board a Starline vehicle,

15  which amounts to a complete denial of service to Ms. Navarro by Starline because Ms.

16  Navarro is a wheelchair user.  Ms. Navarro has suffered actual injury-in-fact.

17         Likewise, Ms. Ruthee Goldkorn of Ms. Wheelchair California was told on three

18  occasions that Starline could not accommodate Ms. Wheelchair California's members,

19  including Ms. Goldkorn, because they use wheelchairs.  SMF ¶ 77-78.  In November

20  2010, Ms. Goldkorn again called Starline in hopes of scheduling a Hop-on, Hop-off

21  Tour for Ms. Wheelchair California.  SMF ¶ 24.  This time Starline told Ms. Goldkorn

22  that it could accommodate wheelchair users.  SMF ¶ 24.  But when Laura Williams of

23  Ms. Wheelchair California tried to confirm what Starline told Ms. Goldkorn by taking

24  a Hop-on, Hop-off Tour, she was denied access and told that, because of her

25  wheelchair, she would have to schedule a tour 24 hours in advance and take a tour

26  with a different and inferior experience.  SMF ¶ 79-80.  Ms. Wheelchair California

27  has been categorically denied service because of disabilities, which is discrimination

28  under the ADA and actual injury-in-fact.

Further, both Plaintiffs have suffered imminent harm for purposes of injury-in-fact.  Based on the unrebutted expert inspection and report of Starline's fleet of vehicles, the overwhelming majority of Starline's vehicles do not have *any* accessibility equipment on them.  SMF ¶ 89-90. And the few vehicles that do have wheelchair lifts or ramps on them remain inaccessible under the ADA because they have unsafe wheelchair ramps, have inadequate securement areas and securement systems, and lack necessary lap and shoulder restraints.  SMF ¶ 89-90.  Starline's operation of these vehicles does not meet the accessibility requirements for transportation systems under the ADA.  These are existing and imminently threatening violations of the ADA that cause injury-in-fact.

### 3. Starline's injury-in-fact arguments are not legally or factually supported.

In the face of these unlawful acts, Starline argues that Plaintiffs lack standing because they have not suffered injury-in-fact.  Mot. at 18-20.  Specifically, Starline argues Plaintiffs lack standing because they cannot show which vehicles they inquired about and whether the ADA requires those specific vehicles be accessible.  Starline also argues that Ms. Wheelchair California did not intend to book a tour when it contacted Starline.  These arguments are wrong and miss the point.

First, Plaintiffs' claims derive from Starline's violations of the ADA, which include the refusal to provide service and offering of unequal benefit (section 12182(b)(1)(A)), imposition of exclusionary eligibility criteria and failure to make modifications to afford service (sections 12182(b)(2), 12184(b)), failure to remove barriers that are readily achievable (sections 12182(b)(2), 12184(b)), and operation of inaccessible transportation systems and vehicles (sections 12182(b)(2)(B)-(C), 12184(b)(3), (5)).  The issue is not whether Plaintiffs were excluded from a specific Starline vehicle, which is what Starline argues.  Rather it is whether Starline refused access to its services on the basis of Plaintiffs' disabilities, which is what took place.[8]

---

[8] Moreover, Starline presents no authority or case law to support its position.  Starline,

Second, Ms. Wheelchair America did have the intent of making a reservation for a tour with Starline. Starline's statements to the contrary are unfounded. Mot. at 18. Ms. Goldkorn called Starline to find out whether Starline was accessible to wheelchair users, so Ms. Goldkorn could schedule a tour for Ms. Wheelchair America. *E.g.,* SMF ¶ 77. Starline told Ms. Goldkorn that Ms. Wheelchair California could not be accommodated due to disabilities. *E.g.,* SMF ¶ 78. This amounted to a unlawful denial of service. Further, Ms. Williams of Ms. Wheelchair California went to Starline in person to schedule a tour, but was denied service because of her disability. Ms. Wheelchair California has suffered injury-in-fact. *E.g.,* SMF ¶ 79-80.

### 4.    Plaintiffs will suffer repeated injury and have standing.

Starline's other standing-related argument—that Plaintiffs supposedly lack "credible evidence" that they intended to access Starline's services at the time the Complaint was filed—is unavailing as well. *See* Mot. at 20. An ADA plaintiff establishes standing by showing that "he is deterred from returning the facility or that he intends to return to the facilities and is therefore likely to suffer repeated injury." *Chapman*, 631 F.3d at 954. Standing is lacking "if [the plaintiff] is indifferent to returning to the store or if his alleged intent to return is not genuine, or if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability." *Id.*

*Molski* identifies a 4-part analysis for determining whether an ADA plaintiff establishes a likelihood of future injury: (1) distance between plaintiff and the place of public accommodation, (2) past patronage of defendant's business, (3) definitiveness of plaintiff's plans to return, and (4) plaintiff's frequency of travel near defendant. *Molski*, 405 F. Supp.2d at 1163. Under this analysis, Plaintiffs standing to seek relief

with any support, states that Plaintiffs must show or have known that the specific vehicles were inaccessible and required to be accessible under the ADA, per Starline's method of operation. *E.g.,* Mot. at 19. In fact, this is entirely inconsistent with, among other things, section 12182(b)(2)(B)-(C) and section 12184(b)(3), (5), which place the burden on Starline to show "equivalent level of service." Plaintiffs are only required to demonstrate that they were denied service on account of their disability—which is the case here.

under the ADA.  First, Plaintiffs are both locals and are in close proximity of Starline's operations.  SMF ¶ 3, 8, 27.  Starline conducts its business operations in Los Angeles.  SMF ¶ 3, 8, 27.  Ms. Navarro lives in Los Angeles, while Ms. Wheelchair California is based in Moreno Valley, California.  SMF ¶ 3, 8, 27.  Second, Plaintiffs have extensive histories of trying to access Starline's services.  Ms. Navarro first tried to access Starline's tours in 2003, while Ms. Wheelchair California has tried to since 2006.  SMF ¶ 52, 77.  Moreover, both Plaintiffs have tried to use Starline's services recently—Ms. Wheelchair California in February 2011, and Ms. Navarro in June 2011 (3 months after this litigation began).  SMF ¶ 79, 91.  Third, both Plaintiffs have genuine intent to use Starline's services once they become accessible to people with disabilities.  Moreover, Ms. Wheelchair California conducts a pageant and participates in the Rose Parade which provides it with opportunities to schedule Starline tours for its members.  SMF ¶ 100.  And Ms. Navarro regularly entertains out-of-state guests, including family members and classmates, whom she wants to use Starline's services with.  SMF ¶ 101.  And fourth, both Plaintiffs regularly are in the Los Angeles and Hollywood area.  SMF ¶ 27, 38.  Under this analysis from *Molski*, there can be no dispute that Plaintiffs have a likelihood of future injury for purposes of standing.

Moreover, Plaintiffs in this case have standing to seek relief under the ADA because they have genuine intent to return to use Starline's services when Starline's vehicles and services comply with the ADA.  Plaintiffs pled in the Complaint at the outset of this litigation that they have been deterred, but they do intend to access Starline's services "once they are assured that the service is fully accessible to people with mobility disabilities."  SMF ¶ 60.  Plaintiffs have made sworn statements to the same effect.  SMF ¶ 60-62, 74, 75, 83.  Ms. Navarro, for instance, testified that had she been told before filing the Complaint that Starline's vehicles were accessible, she would have "taken a few tickets, got on the bus and actually enjoyed the tour."  SMF ¶ 99.  Indeed, she has tried to access Starline's services even after the Complaint was filed.

1    Nothing supports Starline's argument that Plaintiffs' intent is not genuine.

2    Starline relies on *Molski v. Kahn Winery*, 405 F. Supp.2d 1160, 1164 (C.D. Cal.

3    2005), to suggest Plaintiff are "serial advocates" whose intent is not genuine.  Mot. at

4    20.  The plaintiff in *Molski* is nothing like Plaintiffs in this case.  The *Molski* plaintiff

5    had been previously declared "a vexatious litigant," filed 500 lawsuits within 4 years,

6    expressed an "implausible" intent to return to all 500 businesses throughout California

7    that he had sued, claimed personal injuries in previous cases where "the allegations of

8    the complaint foreclosed that possibility," and had filed 16 separate complaints for

9    "vastly similar injuries he sustained between May 20, 2003, and May 23, 2003."  405

10   F. Supp.2d at 1164-66.  Plaintiffs in this case have no where near the litigation history

11   that the *Molski* plaintiff had—Ms. Navarro has been a named plaintiff only two times

12   before, and Ms. Wheelchair California has never been a named plaintiff.  SMF ¶ 12,

13   30.  And Plaintiffs are far more credible than the *Molski* plaintiff.  That Plaintiffs

14   regard advocacy work on behalf of the disability community as being important does

15   not make them vexatious litigants or make their intent to use Starline's services once

16   Starline complies with the ADA less than genuine.

17   Finally, Starline's argument that Plaintiffs' plans to return are not definite

18   should also be rejected.  Plaintiffs have tried to use Starline's services on a number of

19   occasions in the past, and have stated they intend to use Starline's services once

20   Starline complies with the ADA.  SMF ¶ 60-62, 74, 75, 83.  Ms. Navarro has tried to

21   access Starline's tours twice since this summer, and Ms. Wheelchair California

22   attempts to schedule tours yearly by New Year's Day.  SMF ¶ 15, 18, 21, 77, 78, 82,

23   91.  This is in contrast to cases where a plaintiff's plans were found not to be

24   definitive enough.  *E.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)

25   (having no plans to visit Sri Lanka and see endangered animals beyond sometime "in

26   this lifetime").  Moreover, as stated earlier, there is no reason for this Court to not take

27   Plaintiffs' actions and words as genuine.

28

**5.**      **Plaintiffs have standing to challenge the violations on board**
**the vehicles on behalf of themselves and the Class.**

Finally, the Ninth Circuit has clearly laid out that Plaintiffs have standing to

bring claims for violations they did not encounter themselves.  *See Doran v. 7–Eleven*,

524 F.3d 1034, 1047 (9th Cir. 2008); *see also Oliver*, 654 F.3d at 909.  The present

class action bundles claims from numerous individuals; some of those class members

may, in fact, have been allowed to board a Starline vehicle, at which point they would

have encountered the deficient accessibility features on-board Starline's vehicles that

violate the ADA.[9]  Plaintiffs' standing allows it to challenge these violations as well.

**C.**      **Plaintiffs' Complaint Adequately Pleads Claims Of Starline's**
**Violations Of The ADA And California Disability Rights Statutes.**

Starline argues that Plaintiffs' claim should be dismissed because they have not

pled specific regulations, such that Starline has not had adequate notice under Federal

Rule of Civil Procedure 8.  Mot. at 9-10.  This argument is meritless.  Plaintiffs have

sufficiently alleged violations of particular sections of the statute.  Starline points to

one portion of Plaintiffs' complaint (Dkt. No. 1 at ¶ 41) as if that is the sole statement

alleging violations by Starline.  *See* Mot. at 9.  Starline does not acknowledge that the

Complaint alleges violations of both sections 12182 and 12184.  *See* SMF ¶ 93.

Moreover, Plaintiffs have provided notice to Starline that they are asserting violations

of specific regulations.  *See* SMF ¶ 98.

The authorities Starline cites do not support its argument that Plaintiffs' case

should be dismissed because they have not cited violations of specific regulations.

Both *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939 (9th Cir. 2011), and *Oliver*

*v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011), concerned instances where the

---

[9] For an individual using a wheelchair or electric scooter for mobility to be given
access to Starline's vehicles, it is not enough to merely be allowed on-board the
vehicle.  There must be sufficient accessibility features on-board to allow the
individual to be safely transported.  *See* 49 C.F.R. § 37.3 (defining "accessible" as
"complying with the accessibility requirements of parts 37 and 38 of [Title 49]"); *see
also* 49 C.F.R. § 38.23 (requiring vehicles to have very particular types of
"securement devices" for disabled passengers).

plaintiff had not pled sufficient facts.  *See Chapman*, 631 F.3d at 954–55 (stating that plaintiffs' complaint did not "connect[] the alleged violations to [his] disability, or indicat[e] whether or not he encountered any one of them in such a way as to impair his full and equal enjoyment of the [defendant's premises]"); *see also Oliver*, 654 F.3d at 908 (stating that each feature on the defendant's premises that violate accessibility must be alleged.)  That is not the issue here.  Starline here does not argue that Plaintiffs have failed to sufficiently allege facts concerning the vehicles' features that violate the accessibility laws.[10]

Further, the plaintiffs in *Kelley v. Mortgage Electronic Registration Sys., Inc.*, 642 F. Supp. 2d 1048 (N.D. Cal. 2009), had actually cited to specific provisions of TILA in their complaint.  The *Kelley* court simply required plaintiffs to cite to the corresponding provisions in the U.S. Code.  *Kelley*, 642 F. Supp.2d at 1058–59.  And *Kelley* did not dismiss plaintiffs' case with prejudice for not citing specific regulations they allege were violated—rather, there the plaintiffs' claim was dismissed, with leave to amend, for failing to allege sufficient facts.  *Id.* at 1059.

Starline's attempt to move for summary judgment based on Plaintiffs' pleading, especially on an alleged defect that could be cured easily by amending the complaint, is unsupported by law or fact.  This Court should reject Starline's arugment.

### D.   Plaintiffs Do Not Claim Any Violation Outside The Applicable Limitations Period.

As an initial matter, Starline's statute of limitations argument pertains only to Plaintiffs' claims for damages, not for the class-wide injunctive relief they also seek.

---

[10] In any event, Plaintiffs have—out of an abundance of caution—already moved to amend their pleadings to incorporate the findings of their expert and allege particular violations of specific regulations.  *See* SMF ¶ 70, 92.  Plaintiffs, as individuals who were denied access to Starline vehicles entirely, never encountered the various deficiencies in those Starline vehicles that happened to have ramps or lifts on them. *See* SMF ¶ 90.  After learning of the various barriers on-board Starline's vehicles following Plaintiffs' unrebutted expert inspection and report, Plaintiffs promptly moved to amend their pleadings.  Plaintiffs did so to allay all doubt that, for the purposes of the sought-after injunction, they seek the removal of all accessibility barriers from Starline's vehicles.

21

1    This is because each named plaintiff has been denied access by Starline as late as of

2    2010, within the statute of limitations period—even under Starline's proposed

3    duration of two years.[11]   For instance, Ms. Wheelchair California was denied access in

4    late 2009, and again in late 2010.  SMF ¶ 9, 21, 79, 80.  Likewise, Ms. Navarro was

5    denied access twice in summer-autumn of 2010.  SMF ¶ 33, 43

6           With respect to Ms. Navarro's damages claims, her claims for denial access in

7    (summer) 2010 are not affected by the applicable statute of limitations period—even

8    under Starline's argument that the one-year statute of limitation applies.

9           As discussed below, the duration of the statute of limitations period for the

10   California state law claims is an open question—but it is clear that the applicable

11   statute of limitations is greater than the one-year period Starline argues applies.  Mot.

12   at 11.  Indeed, Starline offers no authority for its position that Cal. Code Civ. P. § 340,

13   dictating a one-year statute of limitation, applies to the state law claims in this case.

14          By contrast, California courts have held that the statute of limitations for ADA

15   violations under the Unruh Act and the Blind and Other Physically Disabled Persons

16   Act is at least two years.  Specifically, courts have applied either the two-year or the

17   three-year statute of limitations to claims under the Unruh Act.  *See Providente v. City*

18   *of El Monte*, No. CV 09-3327 PSG (JWJx), 2009 WL 2514184, at *4 (C.D. Cal. Aug.

19   13, 2009); *Olympic Club v. Underwriters at Lloyd's London*, 991 F.2d 497, 501 n. 11.

20   (applying the three-year statute of limitations to Unruh Act claim);*Gatto v Cnty. of*

21   *Sonoma* (2002) 98 Cal. App. 4th 744, 754–760, 120 Cal. Rptr.2d 550 (Cal. Ct. App.

22   2002) (applying the then one-year statute of limitations for personal injury claims—

23   presently two years—to Unruh Act claim); *Mitchell v. Sung*, 816 F. Supp. 597, 602

24   (N.D. Cal. 1993) (same).  Courts typically apply the three-year statute of limitations

25

26   [11] In the Ninth Circuit, the duration of the statute of limitations for an ADA claim is an open question.  Some California courts have applied California's three-year statute of

27   limitations for actions "upon a liability  created by statute" (Cal. Code Civ. P. § 338(a)), to ADA claims.  *E.g., Kemp v. Regents of Univ. of Cal.*, C-09-4687 PJH,

28   2010 WL 2889224, at *7 (N.D. Cal. July 22, 2010) (applying the three-year statute of limitations to an ADA Title II claim.)

1  under Cal. Code Civ. P. 338(a) to claims under the Blind and Other Physically

2  Disabled Persons Act. *See id.*

3        Under these statutes of limitations, Ms. Navarro is entitled to damages under

4  the Unruh Act for denials of access as of March 29, 2009 (and perhaps as early as

5  March 29, 2008) under the Unruh Act, and for denials of access as early as March 29,

6  2008, under the Blind and Other Physically Disabled Persons Act. Starline's attempt

7  to limit Ms. Navarro's statute of limitation to one year is unfounded. *See* Mot. at 11.

8  **III.    CONCLUSION**

9        For all the foregoing reasons, this Court should deny Starline's motion for

10  summary judgment or, in the alternative, partial summary judgment.

11

12  DATED:   December 30, 2011    By:   */s/ Guy Ruttenberg*

13                                 Paula D. Pearlman
Shawna L. Parks

14                                 Rebecca Craemer
DISABILITY RIGHTS LEGAL

15                                 CENTER
800 S. Figueroa St., Suite 1120

16                                 Los Angeles, CA  90017
Tel:  (213) 736-1334

17

18                                 Guy Ruttenberg
Ali-Reza Boloori

19                                 Jason Kelly
KIRKLAND & ELLIS LLP

20                                 333 South Hope Street
Los Angeles, CA  90071
Tel:  (213) 680-8400

21

22                                 *Attorneys for Plaintiffs and Class Counsel*

23

24

25

26

27

28