|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | PRIORITY SEND<br>JS-6 |

CIVIL MINUTES -- GENERAL

Case No.  **CV 11-2620-JFW (CWx)**                                               Date: February 2, 2012

Title:     Ms. Wheelchair California Pageant, Inc., et al. -v- Starline Tours of Hollywood, Inc.

**PRESENT:**

   HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

   Shannon Reilly                                      None Present
   Courtroom Deputy                                    Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFFS:**            **ATTORNEYS PRESENT FOR DEFENDANTS:**
           None                                                         None

**PROCEEDINGS (IN CHAMBERS):**    ORDER DENYING DEFENDANT STARLINE TOURS OF HOLLYWOOD, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [filed 12/21/2011; Docket No. 98];

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [filed 12/23/2011; Docket No. 115];

ORDER DISMISSING PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF;

ORDER DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER MS. NAVARRO'S STATE-LAW CLAIMS FOR DAMAGES

   On December 21, 2011, Defendant Starline Tours of Hollywood, Inc. ("Defendant" or "Starline") filed a Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. On December 30, 2011, Plaintiffs Ms. Wheelchair California Pageant, Inc. and Lillibeth Navarro ("Plaintiffs"), on behalf of themselves and the Class, filed its Opposition (amended on January 6, 2012).  On January 9, 2012, Defendant filed a Reply.  On December 23, 2012, Plaintiffs, on behalf of themselves and the Class, filed a Motion for Summary Judgment.  On December 30, 2011, Defendant filed its Opposition.  On January 9, 2012, Plaintiffs filed a Reply.

   Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court

found these matters appropriate for submission on the papers without oral argument. The matters were, therefore, removed from the Court's January 23, 2012 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Starline is a privately-owned company that offers sightseeing tours in and around Los Angeles, California, including the Movie Stars' Homes Tour and the Hop-on/Hop-off Double Decker City Tour. The Movie Stars' Homes Tour, for example, is a two hour tour that departs from Grauman's Chinese Theater daily every half hour from 9:30 a.m. to sundown. Starline's Hop-on/Hop off Tour has four different predetermined routes which allow passengers to board at a stop, hop-off to take in the attractions along the route, and then hop back on to continue the tour. Starline provides no other services aside from tours and charter services. According to Plaintiffs, the majority of the vehicles that Starline uses for its tours are not accessible to people who use wheelchairs or electric scooters for mobility.

Plaintiff Ms. Wheelchair California Pageant, Inc. ("Ms. Wheelchair California") is a non-profit corporation that advocates on behalf of women who use wheelchairs and generally represents the interests of people with disabilities. Ruthee Goldkorn, the Executive Director of Ms. Wheelchair California, contacted Starline in 2006 and 2007 in order to make tour reservations for members of Ms. Wheelchair California who use wheelchairs for mobility, and on each occasion she was told that Starline's vehicles were not accessible. In 2009, Ms. Goldkorn specifically asked about the accessibility of vehicles on Starline's Hop-on/Hop-off tours, and was advised that their Hop-on/Hop-off vehicles were not accessible. Ms. Goldkorn recalls, however, that Starline advised her that it had a wheelchair accessible van available. In November 2010, during her next contact with Starline, Ms. Goldkorn was advised for the first time that Starline's Hop-on/Hop-off tour was accessible to wheelchair users, but that she would need to call 24 hours in advance to make a reservation. Although the Hop-on/Hop-off tour was available to her, she ultimately decided not to book a tour that year.

Plaintiff Lillibeth Navarro, as a result of contracting polio at the age of five months, requires the use of a wheelchair for mobility. In May 2010 at a Starline terminal in Hollywood, California, Ms. Navarro approached an employee standing next to one of Starline's vehicles and asked if she could board that particular vehicle. She was told that the vehicle did not have a lift or ramp and that in order to board it "she had to get off [her] chair, walk up the steps, and have [her] wheelchair folded." Navarro Deposition 97:10-22, Nov. 30, 2011. Ms. Navarro could not recall if she asked whether Starline had any other accessible vehicles. *Id.* at 98:3-5. In September 2010, Ms. Navarro had essentially the same experience. However, in May or June 2011, again while visiting a Starline terminal in Hollywood, California, Ms. Navarro was advised for the first time that Starline

---

[1] To the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

had accessible tours available, but that Starline required 24 hours advance notice in order to provide her with an accessible vehicle. Ms. Navarro also recalls that during one of her visits, she asked a Starline employee if Starline had a separate service available for people with disabilities (similar to the paratransit system used by public transportation entities), but was advised that Starline did not have such a service.

In their Complaint filed on March 29, 2011, Plaintiffs, on behalf of themselves and all others similarly situated, allege the following claims for relief: (1) violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, *et seq.*; (2) violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq.*; (3) violation of the Blind and Other Physically Disabled Persons Act, Cal. Civ. Code § 54, *et seq.*; and (4) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. Plaintiffs seek declaratory and injunctive relief on behalf of the proposed class. Although Ms. Navarro seeks an award of damages, Ms. Wheelchair California has waived its right to an award of damages.

On June 28, 2011, Plaintiffs filed a Motion for Class Certification. On July 28, 2011, this Court certified the following class under Federal Rule of Civil Procedure 23(b)(2):

> All persons who use wheelchairs or electric scooters for mobility who are denied physical access to Starline Tours of Hollywood, Inc.'s services on the basis of disability.

The Court dismissed Plaintiffs' claim for violation of Cal. Bus. & Prof. Code § 17200 for lack of standing.

The parties have now filed cross-motions for summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not

speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III. DISCUSSION

### A. Plaintiffs' claims are limited to the allegations in the Complaint.

Federal Rule of Civil Procedure 8 provides that a civil complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to comply with this requirement, the complaint must provide "the defendant [with] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 544, 555 (1957)). As the Ninth Circuit recently stated in *Oliver v. Ralphs Grocery Company*, 654 F.3d 903 (9th Cir. 2011):

> Where the claim is one of discrimination under the ADA due to the presence of architectural barriers at a place of public accommodation, we have held that the relevant 'grounds' are the allegedly non-compliant architectural features at the facility. Thus, in order for the complaint to provide fair notice to the defendant, each such feature must be alleged in the complaint.

*Id.* at 908 (internal citations omitted). Although the Ninth Circuit recognized that a plaintiff who has encountered at least one barrier at a facility has constitutional standing to challenge all of the barriers at the facility, "for the purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself . . . ." *Id.* at 909.

In their Complaint, Plaintiffs challenge Starline's refusal to allow wheelchair users access to its tours:

> Starline's tours . . . are not available to all customers. People with disabilities, in particular people who utilize wheelchairs for mobility, are excluded from Starline's services by virtue of Starline's inaccessible tour bus fleet. Instead of relegating people with disabilities to the proverbial back of the bus, Starline does not even let them board.

Complaint at ¶ 4. *See also* Complaint at ¶ 5 ("[Plaintiffs] were repeatedly denied access to Defendant's tour buses on the basis of their disability."); ¶ 10 ("On information and belief, none of

Defendant's 'Hop-on, Hop-off tour' buses can accommodate wheelchair users."); ¶ 14 ("Ms. Goldkorn was told that Defendant Starline's tour buses could not accommodate people who use wheelchairs."); ¶ 16 ("This time the representative for Defendant told Ms. Goldkorn that Starline's standard tours could not accommodate Ms. Wheelchair America . . . ."); ¶ 17 ("[W]hen an associate of Ms. Goldkorn's . . . later attempted to purchase a ticket to the 'Hop-on, Hop-off' tour in person at a Starline kiosk, the ticket agent stated the 'Hop-on, Hop Off' buses could not accommodate wheelchairs and refused to sell her a ticket."); ¶ 19 ("The ticket agent informed Ms. Navarro that the buses could not accommodate her wheelchair and that she could not take a tour unless she was able to get out of her wheelchair and get herself onto the tour bus.").
See Complaint at ¶ 5 ("[Plaintiffs] were repeatedly denied access to Defendant's tour buses on the basis of their disability."); ¶ 10 ("On information and belief, none of Defendant's 'Hop-on, Hop-off tour' buses can accommodate wheelchair users."); ¶ 14 ("Ms. Goldkorn was told that Defendant Starline's tour buses could not accommodate people who use wheelchairs."); ¶ 16 ("This time the representative for Defendant told Ms. Goldkorn that Starline's standard tours could not accommodate Ms. Wheelchair America . . . ."); ¶ 17 ("[W]hen an associate of Ms. Goldkorn's . . . later attempted to purchase a ticket to the 'Hop-on, Hop-off' tour in person at a Starline kiosk, the ticket agent stated the 'Hop-on, Hop Off' buses could not accommodate wheelchairs and refused to sell her a ticket."); ¶ 19 ("The ticket agent informed Ms. Navarro that the buses could not accommodate her wheelchair and that she could not take a tour unless she was able to get out of her wheelchair and get herself onto the tour bus."). In their Complaint, Plaintiffs do not, however, identify any specific modifications in policies, practices or procedures that Starline failed to implement, any specific transportation barriers that Starline failed to remove, or any features of Starline's vehicles that are not compliant with the ADA. Plaintiffs fail to even mention Starline's policy of requiring that wheelchair users provide 24 to 48 hours advance notice before booking a tour, even though they were aware of such a policy at the time they filed their Complaint.

Despite the limited allegations in their Complaint, in their Motion for Summary Judgment, Plaintiffs raise a multitude of other possible ADA violations, including, for example, specific features of Starline's vehicles that are not compliant with the ADA. However, the Court concludes that Starline was not provided with "fair notice" of these claims, and the grounds upon which they rest, in accordance with Federal Rule of Civil Procedure 8.[2] Plaintiffs may only move for summary judgment on those claims which were properly alleged in the Complaint. Based on a fair reading of Plaintiffs' Complaint, Plaintiffs may only challenge Starline's denial of access to its tour services on the basis of disability and Starline's failure to train its employees with respect to its policies on booking, reserving, and otherwise ensuring that its passengers will be provided with an accessible vehicle.

### B. Starline's Denial of Access to its Tours and Failure to Train its Employees

Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations and public transportation services. In general, 42 U.S.C. § 12184 governs private entities "primarily

---

[2]On February 2, 2012, the Court denied Plaintiffs' Motion to Modify Scheduling Order and For Leave to File First Amended Complaint, which sought to add allegations challenging specific accessibility features of Starline's vehicles.

engaged in the business of transporting people," whereas 42 U.S.C. § 12182 governs places of public accommodations not primarily engaged in the business of transporting people. Appendix D to 49 C.F.R. Part 37 provides the Court with guidance in determining whether Starline is primarily engaged in the business of transporting people:

> The rule looks to the private entity actually providing the transportation service in question in determining whether the "private, primarily [engaged in the business of transporting people]" or "private, not primarily [engaged in the business of transporting people]" rules apply. For example, Conglomerate, Inc., owns a variety of agribusiness, petrochemical, weapons system production, and fast food corporations. One of its many subsidiaries, Green Tours, Inc., provides charter bus service for people who want to view National Parks, old-growth forests, and other environmentally significant places. It is probably impossible to say in what business Conglomerate, Inc. is primarily engaged, but it clearly is not transporting people. Green Tours, Inc., on the other hand, is clearly primarily engaged in the business of transporting people, and the rule treats it as such.

Based on the evidence submitted to the Court, Starline, as a provider of sightseeing tours and charter services, is no different than Green Tours, Inc. Accordingly, Starline is primarily engaged in the business of transporting people, and thus is governed by 42 U.S.C. § 12184.

42 U.S.C. § 12184(a) provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce.

As an initial matter, despite its very broad language, 42 U.S.C. § 12184 does not require Starline to maintain a 100% accessible fleet. Indeed, 42 U.S.C. § 12184, and its implementing regulations, do not require, for example, the removal of transportation barriers in existing vehicles that can only be removed through the retrofitting of vehicles by the installation of a hydraulic or other lift or where the removal of barriers is not readily achievable. *See* 42 U.S.C. § 12184(b)(2)(C), 12182(b)(2)(A).

Nevertheless, because Starline does in fact have some accessible vehicles, it is a clear violation of the ADA to categorically refuse wheelchair users access to its tours. *See, e.g.,* 49 C.F.R. § 37.5 ("[A]n entity shall not, on the basis of disability deny to any individual with a disability the opportunity to use the entity's transportation service for the general public, if the individual is capable of using that service."). However, "[d]amages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir.2002). In order to pursue injunctive relief, Plaintiffs must demonstrate a real and immediate threat of repeated injury in the future. *See, e.g., Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). However, based on the undisputed evidence presented by the parties, Plaintiffs have not demonstrated a real and immediate threat of repeated injury in the future.

It is undisputed that, on May 28, 2009, before this lawsuit was filed, Gwen Slaughter, Operation Manager for Starline Tours, advised Starline customer service employees: "It has come to my attention that still some of our customer service employees do not realize that Starline provides the Wheelchair accessible services to its clients as well. Please do not refer them to TourCoach. Starline provides the services. If there is any question, please get the client's name and number then contact your manager or myself." Plaintiffs' Combined Statement of Facts at ¶ 150; Plantiffs' Exhibit 18. It is also undisputed that on October 2, 2010, before this litigation was filed, Gwen Slaughter advised all Starline employees: "If anyone asks whether we have wheelchair accessible vans, the answer is YES!!! We do offer Wheelchair Accessible buses for our tours. All tours regarding Wheelchair Accessible vans must be reserved at least 48 hours in advance. If there are any issues, please take the customer's name and number and present it to our manager. They will contact the customer." Plaintiffs' Combined Statement of Facts at ¶ 151; Plaintiffs' Exhibit 19. Indeed, after these notices were sent, and specifically in their most recent experiences with Starline, Plaintiffs were both advised that Starline had accessible tours and vehicles available.

Clearly, based on the undisputed facts presented by the parties, Starline does not have a policy of refusing access to wheelchair users. At most, the evidence shows past, and isolated violations of the ADA. There is simply no evidence that supports an inference that Plaintiffs currently face a real and immediate threat of repeated injury absent injunctive relief. While Starline does have a policy that wheelchair users must make a reservation 24 to 48 hours in advance if they want to ensure access to a particular tour, such a policy is necessary where Starline does not maintain, and is not required to maintain a 100% accessible fleet. *Cf.* 49 C.F.R. 37.193 (allowing operator of over the road buses to require up to 48 hours' advance notice to provide service, until 100% of the fleet is accessible).

Accordingly, based on the narrow allegations that Plaintiffs chose to include in their Complaint, Plaintiffs have achieved their goals. Starline is not refusing access to people who use wheelchairs or electric scooters for mobility. Starline has clearly and unequivocally instructed its employees to communicate that message to its customers. Although the Court realizes that Plaintiffs now contend that Starline may have committed additional, potential violations of the ADA, Plaintiffs did not give fair notice to Starline of these claims and therefore these claims are not properly part of this action or appropriate for adjudication by the Court. Unfortunately, Plaintiffs may have to file an additional lawsuit to raise these allegations which should have been alleged in this action.

For the foregoing reasons, Plaintiffs' claims for injunctive relief under the ADA, and their corresponding state claims for injunctive relief, which are premised on the violations of the ADA alleged in the Complaint, are **DISMISSED** for lack of standing.

### C. The Court declines to exercise supplemental jurisdiction over Ms. Navarro's claims for damages.

In light of the Court's Order dismissing the only claims over which this Court has original jurisdiction, and after considering judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Ms. Navarro's state-law claims for damages. *See* 28 U.S.C. § 1367(d), *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 351 (1988)) ("'[I]n the usual case in which

all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims.'"). Accordingly, the Court declines to address the motions for summary judgment seeking adjudication of Ms. Navarro's state law claims for damages, and those claims are **DISMISSED without prejudice**.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' claims for injunctive relief under the ADA, and their corresponding state claims for injunctive relief, which are premised on the violations of ADA alleged in the Complaint, are **DISMISSED.** The Court declines to exercise supplemental jurisdiction over Ms. Navarro's state-law claims for damages, and those claims are **DISMISSED without prejudice**. Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment and Plaintiffs' Motion for Summary Judgment are both **DENIED.**

IT IS SO ORDERED.